Charlotte JOHNSON, Appellant–
Plaintiff,

v.

Arjun M. GUPTA, M.D., and Wallace
Sherritt, D.O., Appellees–
Defendants.

No. 64A03–0108–CV–259.

Court of Appeals of Indiana.

Feb. 19, 2002.

Richard A. Miller, Gouveia & Miller, Merrillville, IN, Attorney for Appellant.

David C. Jensen, Carli D. Fish, Eichhorn & Eichhorn, Hammond, IN, Attorneys for Appellees.

## OPINION

FRIEDLANDER, Judge.

Charlotte Johnson filed a medical malpractice action against Dr. Arjun Gupta, who responded by filing for summary judgment on grounds that Johnson's action was not timely filed. The trial court granted the motion and entered summary judgment in favor of Gupta. Johnson challenges that ruling as the sole issue upon appeal.

The brief underlying facts were set out in a previous opinion of this court as follows:

> Gupta performed a hemorrhoidectomy and mucopexy on Johnson in September 1990. Johnson then began experiencing fecal incontinence. Gupta assured Johnson that the symptoms would disappear. Johnson saw other doctors in her effort to find the cause of her incontinence. In 1994, a doctor in Ohio discovered that her rectum had been severed during the surgery in 1990, which gave her a complete and total loss of control over her anal sphincter. The only treatment for this condition was a colostomy.

*Johnson v. Gupta,* 682 N.E.2d 827, 829 (Ind.Ct.App.1997) (Friedlander, J., dissenting) (hereinafter referred to as *Johnson 1* ). In *Johnson 1,* we affirmed a grant of summary judgment in favor of Gupta on grounds that the occurrence-based statute

of limitations in Indiana's Medical Malpractice Act (formerly Ind.Code Ann. § 27–12–7–1, since repealed and recodified at Ind.Code Ann. § 34–18–7–1 (West Supp. 2000)), did not violate Article 1, Section 12 (open courts) and Article 1, Section 23 (equal privileges) of the Indiana Constitution.

Johnson petitioned for transfer to the Indiana Supreme Court, and the petition was granted. In a brief opinion, the supreme court issued the following instructions:

> The Court of Appeals, in this case, held that the Medical Malpractice statute of limitations contained in Indiana Code section 34–18–7–1(b) (1998) was constitutional. The constitutionality of this statute of limitations was discussed in two cases decided today, *Martin v. Richey*, 711 N.E.2d 1273 (Ind.1999), and *Van Dusen v. Stotts*, 712 N.E.2d 491 (Ind. 1999). Therefore, we remand this case to the trial court for further proceedings consistent with *Martin* and *Van Dusen.*

*Johnson v. Gupta,* 711 N.E.2d 1286, 1286 (Ind.1999). Upon remand, the trial court determined that, in light of *Martin v. Richey* and *Van Dusen v. Stotts,* the occurrence-based statute of limitations was constitutional as applied in this case, and once again entered summary judgment in favor of Gupta. Johnson appeals that decision.

This case compels us to examine the *Martin* and *Van Dusen* holdings and apply the principles set out therein in the instant case. It is useful to note first what changes were wrought by those cases, and what principles remained unchanged in their wake. In *Johnson v. St. Vincent Hospital, Inc.,* 273 Ind. 374, 404 N.E.2d 585 (1980), our supreme court determined that the occurrence-based statute of limitations contained in the Indiana Medical Malpractice Act was constitutional. Sever-

al subsequent opinions issued by the court of appeals came to the opposite conclusion. One of those was this court's opinion in *Martin v. Richey,* 674 N.E.2d 1015 (Ind. Ct.App.1997). *See also Harris v. Raymond,* 680 N.E.2d 551 (Ind.Ct.App.1997), *rev'd,* 715 N.E.2d 388 (Ind.1999). *Martin* and *Van Dusen* reaffirmed the supreme court's determination that the Medical Malpractice Act's statute of limitations is constitutional on its face.

Although the rule regarding the *facial* constitutionality of the statute of limitations did not change, *Martin* and *Van Dusen* nevertheless instituted a modification in the former analysis. Specifically, the court addressed the "constitutionality of these Sections in a case where the plaintiff alleging malpractice suffers from a medical condition with a long latency period which prevents her from discovering the alleged malpractice within the two-year medical malpractice statutory period." *Martin v. Richey,* 711 N.E.2d at 1277. The court concluded that although the statute was constitutional on its face, it might be unconstitutional *as applied* in certain cases, particularly those in which the symptoms of the condition or injury caused by the alleged malpractice would not be discernible within the two-year medical malpractice statutory period. *See id.*

The second part of the *Martin* analysis consisted of determining whether the condition at issue was one that had a "long latency period" that prevented the plaintiff from discovering the alleged malpractice, which in turn would toll the running of the statute of limitations. The court described such a condition as one that "may not manifest significant pain or symptoms until several years after the asserted malpractice." *Id.* at 1279. The court determined that the running of the statute was triggered when the plaintiff "discover[s]

the malpractice and the resulting injury or facts that, in the exercise of reasonable diligence, should lead to the discovery of the malpractice and the resulting injury." *Van Dusen v. Stotts*, 712 N.E.2d at 493. It remained only for the court to describe what sort of test to employ or factors to consider in determining when the statute of limitations commenced to run in this context.

*Van Dusen* in particular went on to explain those principles. The court examined three cases that discussed the kinds of facts that, in the exercise of reasonable diligence, should lead to the discovery of medical malpractice. *See Evenson v. Osmose Wood Preserving Co. of Am., Inc.*, 899 F.2d 701 (7th Cir.1990); *Allied Resin Corp. v. Waltz*, 574 N.E.2d 913 (Ind.1991); and *Degussa Corp., Pigment Div. v. Mullens*, 695 N.E.2d 172 (Ind.Ct.App.1998), *rev'd*, 744 N.E.2d 407 (Ind.2001). The following excerpt contains the *Van Dusen* court's synthesis of the principles applied in those three cases:

> The question of when a plaintiff discovered facts which, in the exercise of reasonable diligence, should lead to the discovery of the medical malpractice and resulting injury, is often a question of fact. In general, however, a plaintiff's lay suspicion that there may have been malpractice is not sufficient to trigger the two-year period. At the same time, a plaintiff need not know with certainty that malpractice caused his injury, to trigger the running of the statutory time period. Moreover, when it is undisputed that plaintiff's doctor has expressly informed a plaintiff that he has a specific injury and that there is a reasonable possibility, if not a probability, that the specific injury was caused by a specific act at a specific time, then the question may become one of law. Under such circumstances, generally a plaintiff is deemed to have sufficient facts to require him to seek promptly any additional medical or legal advice needed to resolve any remaining uncertainty or confusion he may have regarding the cause of his injury and any legal recourse he may have, and his unexplained failure to do so should not excuse a failure to timely file a claim. Thus, in such a case, we conclude that the date on which he receives such information— that is, information that there is a reasonable possibility that a specific injury was caused by a specific act at a specific time—is the date upon which the two-year period begins to run.

*Van Dusen v. Stotts*, 712 N.E.2d at 499.

We must now apply these principles to the facts of this case. On September 11, 1990, Gupta performed a laser hemorrhoidectomy and mucopexy on Johnson. Almost immediately after surgery, Johnson "knew there was something wrong" and became incontinent of stool. *Appendix* at 5. She returned to Gupta on December 17, 1990, when he performed a protosigmoidoscopy. Johnson visited Gupta for the last time on January 10, 1992. Johnson's incontinence continued and she visited Gupta's partner, Dr. Piatak, on January 24, 1992. Dr. Piatak informed Johnson that she had no rectal tone. According to the record before us, Johnson did not again consult with a physician concerning her incontinence until August or September of 1994, when she saw Dr. Streeter. Eventually, she was referred to Dr. Scott Strong of the Cleveland Clinic, who informed her on September 27, 1994 that her rectal muscles had been irreparably severed during the laser surgery performed by Gupta on September 11, 1990.

Johnson contends that she did not discover the malpractice or any resulting injury or facts that, in the exercise of reasonable diligence, should have led to the

discovery of Gupta's alleged malpractice until Dr. Strong informed her on September 27, 1994 that Gupta had severed her rectal muscles during the September 11, 1990 operation. Johnson claims that her incontinence was a latent injury within the meaning of *Martin* and *Van Dusen*. Johnson misconstrues the meaning of "latent injury" in those cases.

*Van Dusen* did not, as Johnson implies, establish that the statute of limitations is tolled until the patient discovers a causal link between the physician's actions and the patient's injury. In fact, Johnson seems to propose a test that focuses on the plaintiff's subjective knowledge of that causal link. Such a test misses the point of the exception created in *Martin* and *Van Dusen*. Those cases sought to address the situation where a patient suffers no discernible pain or symptoms until several years after the alleged malpractice. Upon constitutional grounds, the court concluded that a patient cannot reasonably be expected to investigate the cause of a problem that is not yet made manifest. As a result, according to *Martin* and *Van Dusen*, the statute is tolled until the patient experiences symptoms that would cause a person of reasonable diligence to take action that would lead to the discovery of the malpractice.

IC § 34–18–7–1 is an occurrence-based statute of limitations that passes constitutional muster except in cases where the patient does not suffer symptoms that put the patient on notice that something may have gone wrong in the course of medical treatment. The result of Gupta's alleged malpractice was obvious almost from the outset. Johnson experienced fecal incontinence shortly after the surgery. She reported the problem to Gupta and he was unable to diagnose its cause. The fact that Gupta did not discover the ultimate cause of her incontinence does not change the fact that she experienced discernible symptoms. Moreover, Dr. Piatak informed Johnson in January of 1992 that her incontinence was caused by a complete lack of rectal tone. Given the nature of surgery performed by Gupta on September 11, if the incontinence itself did not trigger the running of the statute, then Dr. Piatak's evaluation did.

We hold that on January 24, 1992, at the latest, Johnson had discovered facts that, in the exercise of reasonable diligence, should have lead to the discovery of the malpractice. The two-year period began to run at that point. Johnson did not file her proposed complaint with the Indiana Department of Insurance until January 17, 1995, well after the limitations period had expired. Therefore, the trial court did not err in granting summary judgment in favor of Gupta.

Judgment affirmed.

BARNES, J., and VAIDIK, J., concur.