Mark DORMAN and Tracy Dorman,
Appellants–Plaintiffs,

v.

OSMOSE, INC., Walker Williams
Lumber Co., and Bender Lumber
Co., Inc., Appellees–Defendants.

No. 53A05–0206–CV–284.

Court of Appeals of Indiana.

Jan. 31, 2003.

David S. McCrea, McCrea & McCrea, Bloomington, IN, Attorney for Appellants.

Robert L. Shuftan, David A. Kanter, Martha D. Owens Derek C. Smith, Wildman Harrold Allen & Dixon, Chicago, IL, Kendra Gowdy Gjerdingen, Lonnie D. Johnson, Mallor Clendening Grodner & Bohrer LLP, Bloomington, IN, Donna H. Fisher, Smith Fisher Maas & Howard, Indianapolis, IN, Attorneys for Appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Mark Dorman ("Dorman") and Tracy Dorman (collectively, "the Dormans") appeal the trial court's entry of summary judgment in favor of Osmose, Inc. ("Osmose"), Walker–Williams Lumber Company ("Walker–Williams"), and Bender Lumber Company ("Bender") on their product liability and negligence claims. The Dormans present several issues for our review, which we consolidate and restate as whether the trial court erred when it found that the Dormans' claims are time-barred as a matter of law.

We reverse and remand for further proceedings.

### FACTS AND PROCEDURAL HISTORY

On June 23, 1996, Dorman, an independent contractor, purchased treated wood from Bender and began building a deck for a customer. The wood was treated with chromated copper arsenate ("CCA"), a heavy metal compound that includes arsenic, a known carcinogen. That afternoon, while working on the project, Dorman accidentally struck his right shin against the edge of a piece of freshly-cut treated wood. Dorman wiped blood from the injured area and removed several splinters, but he continued working. Dorman noted a burning sensation at the site of the injury. When Dorman arrived home that evening, his wife, an emergency room technician, cleaned the wound and removed several more splinters.

One week later, on June 29, 1996, the wound on Dorman's right shin was oozing fluid and had become red, swollen, and very warm to the touch. Dorman sought emergency medical treatment at Bloom-

ington Hospital. Dr. Thomas Eccles examined Dorman's leg and diagnosed him as having an "[a]brasion with cellulitis and superficial abscess formation, left pretibial region."[1] When Dorman told Dr. Eccles that he had hit his leg on treated wood, Dr. Eccles responded that "they would fix [him] up." Dr. Eccles also told Dorman that "there's some nasty stuff in that [treated lumber]." Dr. Eccles did not elaborate on that statement, nor did Dorman request a further explanation of what Dr. Eccles meant by "nasty stuff." Dorman had worked with treated wood for several years, and he believed that the wood was salt-treated.[2] Dr. Eccles prescribed antibiotics to treat Dorman's infection and discharged him from the emergency room.

More than a year later, in August 1997, Dorman sought medical treatment when his lower right leg became red, swollen, and painful to walk on. Dr. Jerry Headdy, Jr. examined Dorman's leg and diagnosed him as having "cellulitis with ascending lymphadenitis."[3] There is nothing in Dr. Headdy's report from that examination indicating the etiology of Dorman's symptoms, but Dr. Headdy had initially suspected blood clots. Dorman asked Dr. Headdy if his condition could be related to "run-ning [his] leg into the treated lumber" in 1996.[4] Dr. Headdy prescribed antibiotics and admitted Dorman to the hospital for observation overnight. Dorman did not seek additional medical attention until June 24, 1999, when he consulted Dr. Headdy again regarding swelling in his lower right leg. Dr. Headdy ordered a Doppler study of his leg, the results of which were normal.

On December 10, 1999, Dorman talked with attorney David McCrea regarding the injury he sustained in June 1996, and McCrea informed Dorman that treated wood contains CCA. In early 2000, Dorman consulted Dr. R. Michael Kelly regarding his injury, and Dr. Kelly issued a report on May 5, 2000, in which he concluded that "the chromium, copper and arsenic in the treated wood were the cause of [Dorman's] health problems[.]"

On June 30, 2000, the Dormans filed a complaint, alleging that the defendants were strictly liable and negligent in causing Dorman's injuries. Each defendant moved for summary judgment, alleging that the Dormans' claims were time-barred under the applicable statute of limitations. Following a hearing, the trial court en-

---

1. We note that the parties refer to Dorman's right leg being the affected limb, but Dr. Eccles' report states the left leg was injured. But none of the parties addresses this inconsistency. As such, we will assume that the reference to Dorman's left leg is merely a typographical error.

2. In 1980, Osmose stopped manufacturing a "salt" formulation of treated wood and switched to a formulation using chromated copper arsenate ("CCA"). But Osmose admits that people "both inside and outside the industry" continued to refer to treated wood as "salt-treated" even after 1980. The evidence is undisputed that Dorman was never provided with a copy of the Material Safety Data Sheet regarding the chemicals used in the treated wood.

3. Cellulitis is defined as "a spreading inflammation of subcutaneous or connective tissue," and lymphadenitis is defined as "inflammation of one or more lymph nodes." See THE AMERICAN HERITAGE DICTIONARY 309, 1073 (3d ed.1992).

4. In his deposition, Dorman states that Dr. Headdy responded that he did not know whether the treated wood had anything to do with his cellulitis. But none of the parties designated that page of Dorman's deposition as evidence for summary judgment purposes. As such, we cannot consider this evidence on appeal.

tered summary judgment in favor of each of the defendants. The Dormans now appeal.

## DISCUSSION AND DECISION

In determining the propriety of summary judgment, we apply the same standard as the trial court. *Jesse v. American Cmty. Mut. Ins. Co.,* 725 N.E.2d 420, 423 (Ind.Ct.App.2000), *trans. denied.* We construe all facts and reasonable inferences to be drawn from those facts in favor of the non-moving party. *Id.* Summary judgment is appropriate when the designated evidence demonstrates that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). The purpose of summary judgment is to terminate litigation about which there can be no material factual dispute and which can be resolved as a matter of law. *Zawistoski v. Gene B. Glick Co., Inc.* 727 N.E.2d 790, 792 (Ind.Ct.App.2000).

Where, as here, the material facts are essentially undisputed, our sole task is to determine whether the trial court properly applied the law to the facts. *Laux v. Chopin Land Associates, Inc.,* 615 N.E.2d 902, 905 (Ind.Ct.App.1993), *trans. denied.* Although the trial court entered findings and conclusions, they are not binding upon this court. *Eck & Associates, Inc. v. Alusuisse Flexible Packaging, Inc.,* 700 N.E.2d 1163, 1166 (Ind.Ct.App. 1998), *trans. denied.* However, the findings facilitate our review by providing valuable insight into the court's decision. *Id.* If the trial court's summary judgment can be sustained on any theory or basis in the record, we must affirm. *Ledbetter v. Ball Mem'l Hosp.,* 724 N.E.2d 1113, 1116 (Ind.Ct.App.2000), *trans. denied.*

Indiana Code Section 34–20–3–1, the limitations statute that governs the Dormans' action based on negligence and product liability theories, provides that "any product liability action in which the theory of liability is negligence or strict liability ... must be commenced ... within two (2) years after the cause of action accrues...." *See also Degussa Corp. v. Mullens,* 744 N.E.2d 407, 410 (Ind.2001). The statute is silent on the meaning of "accrues." *Id.* However, we have adopted a discovery rule through case law for the accrual of claims arising out of injuries allegedly caused by exposure to a foreign substance. *Id.* The two-year statute of limitations begins "to run from the date the plaintiff knew or should have discovered that she suffered an injury or impingement, and that it was caused by the product or act of another." *Id.* (quoting *Barnes v. A.H. Robins Co.,* 476 N.E.2d 84, 87–88 (Ind.1985)).

In this case, the defendants contend that the statute of limitations began to run when Dr. Eccles examined Dorman on June 29, 1996, and told him that there was "nasty stuff" in treated wood. The defendants maintain that, given that information, Dorman should have immediately investigated the nature of the chemicals in the wood and should have discovered the cause of his illness. Thus, the defendants assert, the Dormans' complaint was filed more than four years after the date their cause of action accrued. The Dormans respond that the statute of limitations did not begin to run until May 5, 2000, when they received Dr. Kelly's report indicating a causal link with the treated wood. And the Dormans maintain that Dorman did not know that the wood was treated with CCA until his conversation with McCrea in December 1999.

As our supreme court noted in *Degussa,* 744 N.E.2d at 410–11, when determining the accrual of a product liability cause of action:

case law regarding medical malpractice claims is instructive because medical and diagnostic issues are common between the two actions, the statute of limitations for both claims is two years, and discovery is sometimes at issue in determining whether the respective statutes of limitation have been triggered. The question of when a plaintiff alleging medical malpractice "discovered facts which, in the exercise of reasonable diligence, should lead to the discovery of the medical malpractice and resulting injury, is often a question of fact."

(Citations omitted). The court went on to note:

a plaintiff need not know with certainty that malpractice caused his injury, to trigger the running of the statutory time period. Once a plaintiff's doctor expressly informs the plaintiff that there is a "reasonable possibility, if not a probability" that an injury was caused by an act or product, then the statute of limitations begins to run and the issue may become a matter of law. When a doctor so informs a potential plaintiff, the plaintiff is deemed to have sufficient information such that he or she should promptly seek "additional medical or legal advice needed to resolve any remaining uncertainty or confusion" regarding the cause of his or her injuries, and therefore be able to file a claim within two years of being informed of a reasonably possible or likely cause.

Although "[e]vents short of a doctor's diagnosis can provide a plaintiff with evidence of a reasonable possibility that another's" product caused his or her injuries, *a plaintiff's mere suspicion or speculation that another's product caused the injuries is insufficient to trigger the statute.*

*Id.* (emphasis added).

Recently, in *Johnson v. Gupta,* 762 N.E.2d 1280, 1282–83 (Ind.Ct.App.2002), this court addressed the discovery rule in a medical malpractice context and examined two of the leading decisions by our supreme court on this topic, *Martin v. Richey,* 711 N.E.2d 1273 (Ind.1999) (holding medical malpractice statute of limitations unconstitutional as applied to plaintiffs who cannot reasonably discover malpractice within two years), and *Van Dusen v. Stotts,* 712 N.E.2d 491 (Ind. 1999) (holding complaint timely filed where only fifteen months transpired after plaintiff discovered facts which, in exercise of reasonable diligence, should have led to discovery of malpractice). Quoting *Van Dusen,* 712 N.E.2d at 499, we noted that the date on which a plaintiff receives "information that there is a reasonable possibility that a *specific injury* was caused by a specific act at a specific time" is the date that starts the running of the statute of limitations. *Johnson,* 762 N.E.2d at 1282 (emphasis added). In addition, we stated:

*Van Dusen* did not ... establish that the statute of limitations is tolled until the patient discovers a causal link between the physician's actions and the patient's injury. In fact, [appellant] seems to propose a test that focuses on the plaintiff's subjective knowledge of that causal link. Such a test misses the point of the exception created in *Martin* and *Van Dusen.* Those cases sought to address the situation where a patient suffers no discernible pain or symptoms until several years after the alleged malpractice. Upon constitutional grounds, the court concluded that a patient cannot reasonably be expected to investigate the cause of *a problem that is not yet made manifest.* As a result, according to *Martin* and *Van Dusen,* the statute is tolled until the patient *experiences symptoms that would cause a person of*

*reasonable diligence to take action that would lead to the discovery of the malpractice.*

*Id.* at 1283 (emphases added).

■ In this case, the undisputed evidence shows that Dorman hit his leg on treated wood, removed several splinters from the wound, and sought medical treatment one week later when the wound began to ooze, swell, and feel hot to the touch. Dr. Eccles diagnosed Dorman with cellulitis. While Dr. Eccles told Dorman that treated wood had "nasty stuff" in it, Dr. Eccles neither explained what he meant by that statement nor associated Dorman's injury with any chemical element in the wood. Moreover, there is no evidence that Dr. Eccles gave Dorman any reason to believe that he had sustained anything other than a superficial flesh wound that would be cured with antibiotics.[5] Thus, we conclude, as a matter of law, that as of June 29, 1996, Dorman did not experience "symptoms that would cause a person of reasonable diligence to take action that would lead to the discovery" of his cause of action. *See Johnson,* 762 N.E.2d at 1283. In other words, Dorman had no reason to suspect that he had been exposed to CCA or had sustained an injury related to such an exposure.

■ Indeed, the undisputed evidence indicates that Dorman did not seek medical attention for the injury to his leg again until August 1997. At that time, Dorman experienced redness, swelling, and pain in his lower right leg and sought treatment with Dr. Headdy, who suspected that Dorman might have blood clots in that leg. Dorman asked Dr. Headdy whether his symptoms might be related to "running [his] leg into the treated lumber" in 1996. But there is no designated evidence showing that Dr. Headdy even considered that the treated wood might be the cause, let alone that he confirmed Dorman's suspicions. We agree the evidence indicates that Dorman suspected a connection between this recurrence of symptoms in his right leg and the incident on June 23, 1996, but, as we have already noted, a plaintiff's mere suspicion or speculation that another's product caused the injuries is insufficient to trigger the statute. *See Degussa,* 744 N.E.2d at 411 (holding statute of limitations not triggered where plaintiff suspected illness stemmed from defendant's product and treating physician "said nothing to confirm, deny, or even strengthen her suspicions"). Under the circumstances, we conclude that the statute of limitations was not triggered as of August 1997.

Dorman next sought medical treatment for symptoms in his lower right leg on June 24, 1999. Another Doppler study was performed, and the results were normal.[6] It is undisputed that Dorman did not seek additional medical attention for his leg until early 2000. But in the meantime, Dorman had consulted attorney McCrea on December 10, 1999, and learned that the treated wood involved in his June 1996 accident contained CCA.

---

5. In its findings and conclusions, the trial court made inferences against Dorman, the non-movant, namely, that Dr. Eccles knew and had told Dorman on June 29, 1996, that he had sustained an injury as a result of chemicals in the treated lumber. It is well-settled that any doubt about the existence of a factual issue should be resolved against the movant, with all properly asserted facts and reasonable inferences construed in favor of the nonmovant. *Schrader v. Eli Lilly & Co.,* 639 N.E.2d 258, 261 (Ind.1994).

6. There is no designated evidence regarding what symptoms Dorman was experiencing at the time of the June 24, 1999 Doppler study. The only relevant designated evidence is a short report indicating the results of the examination.

Then, in February 2000, Dorman consulted with Dr. Kelly, who, on May 5, 2000, issued a report concluding that Dorman's illness was caused by his exposure to CCA in the treated wood.

■ Dorman filed his complaint on June 30, 2000. Considering the designated evidence, we conclude that, as a matter of law, the statute of limitations did not begin to run prior to June 30, 1998. In short, Dorman's alleged injury was latent in that, prior to 2000, his treating physicians never suggested that his symptoms might have resulted from a chemical exposure or otherwise confirmed his mere suspicions regarding a link between the treated wood and his medical condition. We hold that the Dormans' complaint was timely filed.[7]

Thus, the facts of this case are similar to those in *Degussa*, 744 N.E.2d at 407, and *Evenson v. Osmose Wood Preserving Co. of America, Inc.*, 899 F.2d 701 (7th Cir. 1990). In *Degussa*, the plaintiff suspected that her inhalation of defendant's product caused her illness, but her physician did nothing to confirm or deny that suspicion. Our supreme court held that the plaintiff's complaint was timely filed where her "physicians had [not] yet informed her that there was a *reasonable* possibility, if not probability, that her ailments were caused by work chemicals" two years prior to the complaint being filed. *Degussa*, 744 N.E.2d at 411–12 (specifying no date statute of limitations was triggered, but holding that it was sometime within intervening two years) (emphasis in original).

In *Evenson*, the plaintiff worked in the manufacture of CCA-treated wood and developed medical problems, which he suspected stemmed from his exposure to CCA. In the course of his medical treatment, the plaintiff began to suspect that his symptoms were related to CCA exposure, but his physicians either disagreed or stated no opinion at all. The court noted that:

> Evenson, despite his diligent efforts, received no indication anytime prior to the two-year period before he filed his complaint that his suspicion as to the cause of his injuries might be correct.... Evenson, a mere layperson, only suspected that CCA was causing his medical problems. Although Evenson asked various doctors over the course of his continuous medical treatment if CCA could be the cause of his injuries, no doctor, prior to the two-year period before he filed his complaint, confirmed his suspicions that CCA might be the cause.

*Evenson*, 899 F.2d at 704. The court held that Evenson's complaint was not time-barred.

■ Again, here, the designated evidence shows that Dorman, a layperson, merely suspected that his symptoms might be related to his impact with the treated wood on June 23, 1996, and his effort to confirm that suspicion with his treating physician, Dr. Headdy, was unsuccessful. The defendants are correct that a plaintiff need not know the full extent of his injury for a cause of action to accrue, citing *Mayfield v. Continental Rehabilitation Hospital*, 690 N.E.2d 738, 741 (Ind.Ct.App.1998), *trans. denied*. But where, as in this case, the true nature of the injury is latent, no cause of action accrues until the plaintiff "experiences symptoms that would cause a person of reasonable diligence to take action that would lead to the discovery" of a tort and the resulting injury. *See John-*

---

7. We note that Dorman was the only named plaintiff in the original complaint, but he moved to amend his complaint in September 2001 to add his wife's loss of consortium claim. The trial court granted that motion to amend, and the amendment relates back to the date of the original complaint under Trial Rule 15(C).

**470**

*son,* 762 N.E.2d at 1283; *Van Dusen,* 712 N.E.2d at 497. Moreover, while defendants contend that Dorman knew or should have known that the wood was treated with CCA as early as June 1996, they do not contend that the Material Safety Data Sheet or any other written warning would have helped Dorman's treating physicians to make the correct diagnosis. In other words, the defendants make no argument that, had the physicians known Dorman was exposed to CCA, they would have informed him, prior to 2000, of a "reasonable possibility" or "probability" that the exposure was the cause of his illness. *See Degussa,* 744 N.E.2d at 411–12. Indeed, the treating physicians in both *Degussa* and *Evenson* were given specific information regarding the appellants' work-related exposures and still failed to confirm those appellants' suspicions.

The Dormans' complaint is not time-barred. We reverse the trial court's grant of summary judgment in favor of the defendants and remand for further proceedings.

Reversed and remanded for further proceedings.

FRIEDLANDER, J., and VAIDIK, J., concur.