Keith A. MORGAN and Tricia
L. Morgan, Appellants–
Plaintiffs,

v.

COLUMBUS McKINNON CORPORA-
TION and Horner Electric, Inc.,
Appellees–Defendants.

No. 89A05–0505–CV–270.

Court of Appeals of Indiana.

Nov. 21, 2005.

---

David J. Burton, Burton & Simkin, Richmond, IN, Attorney for Appellants.

Joseph M. Dietz, Meils Thompson Dietz & Berish, Indianapolis, IN, Attorney for Appellees.

## OPINION

BAKER, Judge.

Appellants-plaintiffs Keith A. Morgan (Morgan) and Tricia L. Morgan appeal the trial court's order granting summary judgment in favor of appellee-plaintiff Horner Electric, Inc.[1] Specifically, the Morgans assert that the trial court erred in finding that the statute of limitations had run on the Morgans' claim against Horner alleging negligence and loss of consortium. Finding that Morgan's symptoms were of a kind that would cause a person of reasonable diligence to take action that would lead to the discovery of his cause of action, we affirm the judgment of the trial court.

## FACTS

On May 24, 2001, Morgan was operating an electric chain hoist at his place of employment, Johns Manville Corporation (Manville), in Richmond when he sustained an electrical shock of approximately 277 volts. The hoist was manufactured by Columbus McKinnon Corporation (Columbus). Columbus had sold the hoist to Horner on June 24, 2000. Horner, in turn, sold the hoist to Ferguson Enterprises, Inc., on February 20, 2001. At Ferguson's request, Horner modified the hoist to have

---

1. Columbus McKinnon Corporation was not a party to the motion for summary judgment.

a fifty-foot lifting capacity, which required Horner to replace the existing chain, control cord, and some wiring. The hoist was then delivered to Manville several days later. It was later determined that the electrical shock occurred because the control cord on the hoist was not properly grounded.

On May 24, 2001, Morgan reported the incident to Manville, and he was referred to the plant physician, Dr. Mahendra K. Kalra. Dr. Kalra saw Morgan the next day. Morgan reported to Dr. Kalra that he had been feeling nervous and experiencing an aching in his left arm and on the left side of his neck. Dr. Kalra performed a physical examination and an EKG test on Morgan, which was normal. Dr. Kalra advised Morgan to take Advil for the aching and to let him know if he had any ongoing symptoms.

Morgan continued to work in his regular capacity and sought no further medical treatment until October 30, 2001, when he returned to Dr. Kalra. Morgan reported that since sustaining the electrical shock, he had felt nervous, panicky, dizzy, and light-headed several times per day. Morgan also complained of a skin rash on his face that "came on a week after the electric shock and he relates this to the shock." Appellant's App. p. 117. Morgan also complained of difficulty sleeping and of pain in his right shoulder. On that date, Dr. Kalra diagnosed Morgan with anxiety disorder and referred him to a specialist for a neurological consultation.

On November 1, 2001, Morgan was evaluated by neurologist Dr. Kelly Parnell. Dr. Parnell diagnosed Morgan with "[s]pells following an electrocution: I suspect that he had actually developed an anxiety disorder with panic attacks as opposed to any true neurologic condition." Appellant's App. p. 119. On August 27, 2003, Morgan underwent a neuropsycho-logical evaluation with Dr. Lance Trexler of the Rehabilitation Hospital of Indiana. Dr. Trexler diagnosed Morgan with mild cognitive impairment and clinical anxiety disorder.

On May 13, 2003, the Morgans filed a complaint against Columbus, Ferguson, and an unknown party, alleging product liability, negligence, and loss of consortium. On June 12, 2003, Ferguson filed a notice of removal to federal court. On September 8, 2003, the Morgans moved to remand the action to state court and to amend his complaint to add Horner as a defendant. On March 11, 2004, the Federal District Court granted both of the Morgans' motions, and on March 19, 2004, the Morgans filed their amended complaint.

On April 29, 2004, Horner filed a motion for summary judgment, arguing that the Morgans' claims against Horner were barred by the statute of limitations. On March 23, 2005, the trial court granted summary judgment in Horner's favor, concluding that from either May 24 or 25, 2001, Morgan "was aware of his injury and the instrumentality which caused the same." Appellant's App. p. 186. Therefore, the two-year statute of limitations began running no later than May 25, 2001, and the Morgans' claim against Horner was barred because it was untimely. The Morgans now appeal.

### DISCUSSION AND DECISION

■ The Morgans argue that the trial court erred in granting summary judgment to Horner. Specifically, they contend that the statute of limitations did not begin to run until, at the earliest, October 30, 2001, when Dr. Kalra diagnosed him with anxiety disorder.

When reviewing the grant of summary judgment, we use the same standard as the trial court. Summary judgment is

only appropriate if the designated evidence demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Fraternal Order of Police, Lodge No. 73 v. City of Evansville,* 829 N.E.2d 494 (Ind.2005). All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party. We will carefully review decisions on summary judgment motions to ensure that the parties were not improperly denied their day in court. *Id.*

■ Indiana Code section 34–20–3–1 provides that any product liability action based on negligence or strict liability must be commenced within two years after the cause of action accrues. The "discovery rule" states that the statute of limitations begins " 'to run from the date the plaintiff knew or should have discovered that she suffered an injury or impingement, and that it was caused by the product or act of another.' " *Degussa Corp. v. Mullens,* 744 N.E.2d 407, 410 (Ind.2001) (quoting *Barnes v. A.H. Robins Co.,* 476 N.E.2d 84, 87–88 (Ind.1985)).

In support of their argument, the Morgans direct us to *Dorman v. Osmose, Inc.,* 782 N.E.2d 463 (Ind.Ct.App.2003). *Dorman* involved a products liability action against the seller of wood treated with chromated copper arsenate (CCA) on which Dorman had accidentally struck his right shin on June 23, 1996. Dorman wiped blood from the injured area and removed several splinters but kept working. One week later, the wound was oozing fluid and had become red, swollen, and very warm to the touch. Upon seeking emergency medical treatment, the doctor told Dorman that there was "some nasty stuff in that [treated lumber]." *Id.* at 466. More than a year later, Dorman sought medical treatment when his lower right leg became red, swollen, and painful to walk

on. The doctor treated Dorman with antibiotics. Dorman then spoke to an attorney regarding his injury, and the attorney informed him that treated wood contains CCA, a known carcinogen. *Id.*

Dorman brought suit against the manufacturer on June 30, 2000. The trial court granted the manufacturer's motion for summary judgment, finding that the statute of limitations had run on Dorman's claim. On appeal, we reversed, concluding as a matter of law that "as of June 29, 1996, Dorman did not experience 'symptoms that would cause a person of reasonable diligence to take action that would lead to the discovery' of his cause of action." *Id.* at 468 (quoting *Johnson v. Gupta,* 762 N.E.2d 1280, 1283 (Ind.Ct.App. 2002)). This court also concluded that Dorman's injury was latent, inasmuch as his treating physician did not suggest that his symptoms might have resulted from expose to CCA prior to 2000. *Id.*

■ Morgan concedes that were he seeking recovery for different injuries as a result of the electrical exposure, such as burn injuries, his claim against Horner "might be time barred, as such injuries would have been visible and obvious and not latent." Appellant's Br. p. 13. But Morgan asserts that he is seeking redress for cognitive and psychological disorders and that *Dorman* is controlling here because he was not diagnosed with anxiety disorder until October 30, 2001—five months after he sustained the electric shock. As noted in *Dorman,* the question is whether Morgan experienced symptoms that would cause a person of reasonable diligence to take action that would lead to the discovery of his cause of action. Events short of a diagnosis can provide a plaintiff with enough evidence to take action; once a plaintiff's doctor expressly informs the plaintiff that there is a reasonable possibility, if not a probability, that an

injury was caused by an act or product, then the statute of limitations begins to run. *Dorman*, 782 N.E.2d at 467 (citing *Degussa*, 744 N.E.2d at 410–11).

On May 25, 2001, the day after the accident, Morgan reported to Dr. Kalra that he felt nervous. Appellant's App. p. 114, 116. Both Dr. Kalra and Morgan connected that feeling of nervousness to the electrical shock. In his report, Dr. Kalra stated, "Yesterday he was pushing a hoist on the right over an opening. The left hand was touching a metal railing and he got a shock of 277 volts.... Today he complains of feeling nervous and aching in the left arm and left side of the neck." Appellant's App. p. 116. And Morgan reported the nervousness to Dr. Kalra pursuant to a referral by his employer after he sustained the electrical shock. Appellant's App. p. 114. At that appointment, Dr. Kalra advised Morgan to let him know if there were ongoing symptoms. Appellant's App. p. 116. It was because Morgan had ongoing symptoms "following an electric shock at work," including sleeplessness and feelings of nervousness, panic, dizziness and light-headedness several times a day, that he returned to Dr. Kalra on October 30, 2001. Appellant's App. p. 117. Although Morgan was not formally diagnosed with anxiety disorder until October 30, 2001, it is apparent from the record that at all times he and Dr. Kalra connected these feelings to the electrical shock. Therefore, Morgan's symptoms were such that would cause a person of reasonable diligence to take action that would lead to the discovery of his cause of action.

Nevertheless, Morgan asserts that we should consider his injuries to give rise to two separate causes of action—one for physical injuries and one for cognitive and psychological injuries. In support of this argument, Morgan points us to an Illinois case called *Peterson v. Instapak Corp.*, 690 F.Supp. 697 (N.D.Ill.1988), *aff'd by Peterson v. Sealed Air Corp.*, 902 F.2d 1232, (7th Cir.1990). Peterson sustained a lung injury from exposure to chemical fumes and was diagnosed a few days later with chemical pneumonia. Several months later, Peterson was diagnosed with a rare kidney disease known as Goodpasture's Syndrome, which his doctor found to have been caused by the exposure to the chemical gas. *Id.* at 699–700. In finding that Peterson's cause of action based on his lung injury was time-barred although his claim based on Goodpasture's Syndrome was not, the District Court noted that Illinois draws a distinction between injuries from sudden traumatic events and those that gradually manifest themselves over time. The discovery rule applied to latent injuries that manifest themselves at a later time as long as the later resulting injury was of a different kind and was not reasonably foreseeable at the time of the initial injury. *Id.* at 702.

Even assuming that Indiana followed this rule, we cannot see how *Peterson* helps Morgan's case. As previously noted, the designated evidence demonstrates that Morgan knew as early as the day after the accident that he felt nervous due to the electric shock. Appellant's App. p. 114. Those symptoms persisted several times daily for at least five months before he returned to Dr. Kalra. These were not latent injuries that manifested themselves at a later time. These were injuries that were apparent and persistent from the time of the accident. Thus, we cannot say that the trial court erred in finding that the statute of limitations began to run no later than May 25, 2001, the date of his first appointment with Dr. Kalra.

◼ Finally, the Morgans assert that the trial court must be reversed because they could not have learned about Horner's role in the accident until after they

commenced litigation in May 2003 and began discovery. Essentially, the Morgans contend that the statute of limitations was tolled because they did not know that the injury was caused by the product or act of Horner until May 2003. *See Degussa Corp.,* 744 N.E.2d at 410.

Morgan cites to another federal case, *In re Bridgestone/Firestone, Inc.,* 200 F.Supp.2d 997 (S.D.Ind.2002), in support of his argument. In *Bridgestone,* tire tread separated, causing a severe accident involving the plaintiff's vehicle. The claim was filed after the Colorado statute of limitations had passed if it had begun running on the date of the accident. The federal court held that the claim was not time-barred because the mere fact of the tread separation did not put the plaintiff on notice that a negligent act had occurred. Furthermore, the federal court pointed to the plaintiff's contention that Ford had fraudulently concealed defects in the tires that hindered the plaintiff's ability to gain access to the specialized knowledge necessary to understand that they had a claim. *Id.* at 998–99.

From this case, the Morgans extrapolate the argument that the statute of limitations should be tolled in their case because the mere occurrence of the electrical shock did not put them on notice that a negligent act had occurred. But here, there was no fraudulent concealment of information. On June 25, 2001, a month after the accident, Horner inspected the hoist. Its report to Manville states, "It was noted that control cord on hoist had been pulled out. The ground connection was not attached. This appears to be reason why the user had been shocked." Appellant's App. p. 71. Morgan concedes that he "suspected that problems with the control cord may have caused or contributed to the electrical shock incident of May 24, 2001...." Appellant's Br. p. 21. He could easily have

confirmed this suspicion at any point following the date of Horner's report to Manville. Yet he waited until May 13, 2003—eleven days before the statute of limitations presumptively ran out—to file his claim. To accept Morgan's argument would allow plaintiffs to effectively double the time in which they can bring any claim by waiting until the last minute to file and then asserting that they could not have known whom to sue until they commenced discovery. We will not eviscerate the statute of limitations in that way.

In sum, we find no error in the trial court's grant of summary judgment in favor of Horner. Morgan's symptoms were apparent and persistent from the time of the accident such that they would cause a person of reasonable diligence to take action that would lead to the discovery of his cause of action.

The judgment of the trial court is affirmed.

MATHIAS, J., concurs.

RILEY, J., dissents with opinion.

RILEY, Judge, dissenting.

I respectfully dissent. The trial court erred in granting summary judgment to Horner Electric, Inc. As the majority opinion appropriately points out the statute of limitations begins "to run from the date the plaintiff knew or should have discovered that she (he) suffered an injury or impingement and that it was caused by the product or act of another." *Degussa Corp. v. Mullens,* 744 N.E.2d at 410. Morgan was first diagnosed with anxiety disorder on October 30, 2001.

It is true that Morgan reported to his doctor on May 25, 2001, that he "felt nervous." Dr. Kalra noted his symptoms and told Morgan to let him know if these symptoms were ongoing. That is exactly what Morgan did on October 30, 2001,

when he returned to Dr. Kalra complaining of sleeplessness, panic, dizziness and light-headedness several times a day. Dr. Kalra's diagnosis on October 30th was the trigger date.

It is apparent to me that all of those symptoms were not present on May 25th, the day after he sustained the injury. It was only after five months, when the symptoms persisted and became a continual problem, that Morgan was first diagnosed with having a mild cognitive impairment, clinical anxiety disorder and post-traumatic stress disorder. He did follow up as his doctor ordered because his symptoms worsened.

Morgan did exercise ordinary diligence in following his doctor's orders and did timely pursue a more specific diagnosis for his condition. I would reverse the entry of summary judgment and find that the claim against Horner did not violate the statute of limitations.