# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**SCOTT A. TANNER**
Tanner Law Group
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES:

**JUDSON G. BARCE**
**HUNTER J. REECE**
**BONNIE J. ADAMS**
Barce & Reece, P.C.
Fowler, Indiana



FILED

Feb 07 2012, 9:23 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BENJAMIN CROSSING HOMEOWNERS'<br>ASSOCIATION, INC., | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 79A04-1103-PL-185 |
| | ) | |
| ROSE HEIDE and DAVID F. WILKERSON, | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Thomas H. Busch, Judge
Cause No. 79D02-0810-PL-40

**February 7, 2012**

**OPINION - FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Rose Heide and David F. Wilkerson, residents of a planned unit development in Tippecanoe County called Benjamin Crossing, filed a complaint seeking damages and a declaratory judgment that the Tippecanoe Area Building Commission ("Building Commission") and the Benjamin Crossing Homeowners' Association ("Homeowners' Association" or "the Association") could not enforce a restrictive covenant to prohibit the operation of a child care home in their respective residences in Benjamin Crossing. The restrictive covenant was also incorporated into the planned unit development ordinance for Benjamin Crossing, but state law prohibits enforcement of a zoning ordinance that prohibits the operation of a child care home in a residence.

The Homeowners' Association filed a counterclaim seeking an injunction to prohibit Heide and Wilkerson from operating child care homes in their residences. The Homeowners' Association then filed a motion for summary judgment on the counterclaim. The trial court granted summary judgment in favor of Heide and Wilkerson on the Association's counterclaim, and the Homeowners' Association now appeals. The Association presents the following issue for review: whether the trial court erred when it concluded that the Homeowners' Association may not enforce restrictive covenants prohibiting the operation of a child care home in the planned unit development where the planned unit development ordinance that adopted the covenants may not be enforced under state law.

We reverse and remand with instructions.

2

# FACTS AND PROCEDURAL HISTORY

In early 2003, C.P. Morgan Communities, L.P. and C.P. Morgan Investment Co., as members of Benjamin Crossing LLC ("Developer"), executed the Declaration of Covenants, Conditions and Restrictions for Benjamin Crossing ("the Declaration"). The Declaration in part sets forth the restrictive covenants for Benjamin Crossing, a planned unit development ("PUD") and residential subdivision in Tippecanoe County. On March 5, 2003, the Tippecanoe Area Plan Commission ("Plan Commission") gave final approval for Section 1 of the PUD when it passed Resolution PD 03-03. That resolution also approved the Declaration. Resolution PD 03-03 and the Declaration were recorded simultaneously on March 7, 2003, in the Tippecanoe County Recorder's Office.

Regarding the establishment of the Homeowners' Association, the Declaration provides, in part:

> **Section 1.2 "Association"** shall mean Benjamin Crossing Homeowners' Association, Inc., or an entity of similar name, its successors and assigns, which shall be created as an Indiana nonprofit corporation formed or to be formed under the Indiana Nonprofit Corporation Act of 1991, as amended.
>
> * * *
>
> **Section 4.1 Organization of Association.** The Association shall be organized as a nonprofit corporation under the laws of the State of Indiana, to be operated in accordance with the Articles of Incorporation which have been filed or will be filed by Developer, and the Code of By-Laws of the Association.
>
> * * *
>
> **Section 4.3 General Duties of the Association.** The Association . . . shall also have the right, but not the obligation[,] to act on behalf of any Owner or Owners in seeking enforcement of the terms, covenants, conditions and restrictions contained in the Plats. . . .

3

Appellant's App. at 61, 70-71 (emphasis added). The Declaration further provides, in

relevant part:

> **Section 7.1   Use of Lots.**  <u>Except as permitted by Section 7.26[1] hereof, each Lot shall be used for residential purposes only, and no trade or business of any kind may be carried therein.</u>  The use of a portion of a Dwelling Unit as an office by an Owner, or his tenant shall not be considered to be a violation of this covenant if Owner is in compliance with Section 7.26 below.  No building or structure shall be located on any Lot outside of the setback lines designated on the Plats.
>
> \* \* \*
>
> **Section 7.24   Business Uses.**  <u>No trade or business may be conducted in or from any Lot, except that an Owner or occupant residing in a Dwelling Unit may conduct business activities within the Dwelling Unit so long as:  (a) the existence of the business activity is not apparent or detectable by sight, sound or smell from outside the Dwelling Unit; (b) the business activity conforms to all zoning requirements for the Real Estate; (c) the business activity does not involve persons coming onto the Real Estate who do not reside in the Real Estate or door-to-door solicitation of residents of the Real Estate; and (d) the business activity is consistent with the residential character of the Real Estate and does not constitute a nuisance, or a hazardous or offensive use, or threaten the security or safety of other residents of the Real Estate, as may be determined in the sole discretion of the Board</u>.
>
> The terms "business" and "trade", as used in this provision, shall be construed to have their ordinary, generally accepted meaning and shall include, without limitation, any occupation, work or activity undertaken on an ongoing basis which involve[s] the provision of goods or services to persons other than the provider's family and for which the provider receives a fee, compensation, or other form of consideration, regardless of whether:  (i) such activity is engaged in full[-] or part-time; (ii) such activity is intended to or does generate a profit; or (iii) a license is required therefore [sic].  Notwithstanding the above, the leasing of a Lot or Dwelling Unit shall not be considered a trade or business within the meaning of this section.  This section does not apply to any commercial property within the Real Estate nor shall it apply to any activity conducted by the Developer or

---

[1]  The reference to Section 7.26 in Section 7.1 of the Declaration is apparently a typographical error.  Section 7.26 refers to playground equipment.  The reference in Section 7.1 should be to Section 7.24.

a builder approved by the Developer with respect to its development and sale of the Real Estate  or its use of any Lots or Dwelling Units which it owns within the Real Estate.

* * *

**Section 8.2  Authority and Enforcement.**

(a)  Upon the violation of this Declaration, the By-Laws, or any rules and regulations duly adopted hereunder, including, without limitation, the failure to timely pay any assessments, the Association shall have the power, after fifteen (15) days['] written notice to the Owner or the occupant of said violation, and failure by said Owner or occupant to cure the violation:  (i) to cause the Association to correct the violation at its own cost and expense, which said cost and expense shall constitute a continuing lien upon the Lot of the Owner of the occupant who is guilty of such violation; (ii) to suspend an Owner's right to vote in the Association; and (iii) to suspend an Owner or occupant's right (and the right of his or her family, guests, and tenants) to use any of the Common Areas. . . .

(b)  Notwithstanding subsection (a) above, a violation or threatened violation of any of the covenants and restrictions contained in this Declaration and the provisions contained in the Articles of Incorporation and By-Laws of the Association, or any rules and regulations adopted hereunder, shall be grounds for an action at law or equity instituted by the Developer, the Association, or any Owner against any person violating or threatening to violate any such covenant, restriction, rule, or regulation. . . .

Id. at 80, 85-86, 89 (emphases added).

In May 2003, Rose Heide purchased a home in Benjamin Crossing.  Heide lives in the residence, and in April 2008 she began operating a licensed child care home in her residence.  On weekdays, Heide cares for up to twelve children, only three of whom reside in Benjamin Crossing.  The children are usually dropped off at Heide's home at 7:30 a.m., and they are usually picked up by 6:00 p.m., although the child care home is occasionally open as late as 10:30 p.m.  Heide has a fenced backyard containing at least one swingset.  The children in Heide's care play under adult supervision in Heide's yard

5

at the same time for approximately thirty minutes three times each day. Heide previously advertised her child care operation by placing a sign in her yard, but at the Association's request she removed the sign.

Heide's home is a two-story house of approximately 3600 square feet. The entire downstairs of the home is used for the child care operation (excepting the garage). Heide filed a Schedule C (Profit or Loss from Business) and Form 8829 (Expenses for Business Use of Your Home) with her federal income tax return. On her tax return she indicated that approximately one hundred percent of her annual income is from operating the child care business and that fifty percent of her home is used for the child care operation.

Wilkerson purchased a home in Benjamin Crossing in February 2008. In March 2008, he and his wife began operating a licensed child care home in their residence, and the business has had at least one part-time employee. On weekdays Wilkerson's wife cares for up to twelve children, none of whom reside in Benjamin Crossing. The children are usually dropped off at Wilkerson's home at 8:00 a.m., and they are usually picked up between 5:00 and 6:00 p.m., although the child care operation is occasionally open as early at 6:00 a.m. and as late as 11:00 p.m. Wilkerson has a fenced backyard containing at least one swingset as well as some riding toys, balls, and bikes. The children in Wilkerson's care play under adult supervision in Wilkerson's yard at the same time twice each day for approximately thirty minutes, sometimes longer in the summer.

Wilkerson's home is a two-story house of approximately 2800 square feet. The entire downstairs of the home is used for the child care operation (excepting the garage). Wilkerson and his wife filed a Schedule C (Profit or Loss from Business) and Form 8829

(Expenses for Business Use of Your Home) with their federal income tax return. On the tax return they indicated that approximately forty percent of their annual income is from operating the child care business and that forty-two percent of the home is used for the child care operation.

On October 29, 2008, Heide and Wilkerson filed a complaint against the Homeowners' Association, the Building Commission,[2] and C.P. Morgan Communities, L.P., seeking damages and a declaratory judgment that the Building Commission and the Association could not enforce the restrictive covenant that prohibits the operation of a business in residences in the PUD.[3] The Association filed a motion to dismiss the complaint as well as a counterclaim, seeking an injunction to prohibit Heide and Wilkerson from operating their child care homes in Benjamin Crossing. Following a hearing, the trial court granted the Association's motion to dismiss the complaint on the ground that Lewis-Levett v. Day, 87 N.E.2d 293 (Ind. Ct. App. 2007), "permits the enforcement of a restrictive covenant prohibiting the operation of businesses within a development to which the covenant applies against a licensed daycare." Appellant's App. at 5.

---

[2] In the complaint, Heide and Wilkerson allege that the Building Commission is responsible for enforcing the covenants in Benjamin Crossing. The trial court denied the Building Commission's motion to dismiss the complaint, but the Building Commission later dismissed its counterclaim against Heide and Wilkerson, and Heide and Wilkerson dismissed their claims against the Building Commission, without prejudice.

[3] In the complaint Heide and Wilkerson alleged that they had purchased their homes in Benjamin Crossing in reliance on statements by C.P. Morgan Communities, L.P. personnel that restrictive covenants for the PUD did not prohibit the operation of a child care home in the PUD. The claim against C.P. Morgan Communities, L.P. is not before us on appeal.

On January 22, 2010, the Homeowners' Association filed a motion for summary judgment on its counterclaim. Apparently assuming that the trial court would enter judgment for the Homeowners' Association, neither Heide nor Wilkerson filed any response, designated evidence, or filed a summary judgment motion. After a hearing, the trial court reversed the reasoning behind its prior order granting the Association's motion to dismiss Heide and Wilkerson's complaint, finding in relevant part that the "restrictive covenants of a planned unit development have the status of a zoning ordinance, and a zoning ordinance may not exclude the operation of a licensed child care home in the operator's residence." Appellant's App. at 13. The trial court then granted summary judgment for Heide and Wilkerson on the Association's counterclaim. The Homeowners' Association now appeals.

## DISCUSSION AND DECISION

The Homeowners' Association appeals the trial court's order denying summary judgment for the Association and granting summary judgment for Heide and Wilkerson. In an appeal from the grant or denial of summary judgment, we apply the same standard used by the trial court. See Hartman v. Keri, 883 N.E.2d 774, 777 (Ind. 2008). We review a summary judgment order de novo. Bules v. Marshall County, 920 N.E.2d 247, 250 (Ind. 2010). The purpose of summary judgment is to end litigation about which there can be no factual dispute and which may be determined as a matter of law. Shelter Ins. Co. v. Woolems, 759 N.E.2d 1151, 1153 (Ind. Ct. App. 2001), trans. denied. We must determine whether the evidence that the parties designated to the trial court presents a genuine issue of material fact and whether the moving party is entitled to a judgment as a

matter of law. Ind. Trial Rule 56(C); Bules, 920 N.E.2d at 250. We construe all factual inferences in the nonmoving party's favor and resolve all doubts as to the existence of a material issue against the moving party. Bules, 920 N.E.2d at 250. Summary judgment is a lethal weapon and courts must be mindful of its aims and targets and beware of overkill in its use. Heeb v. Smith, 613 N.E.2d 416, 420 (Ind. Ct. App. 1993), trans. denied.

Although the trial court entered findings and conclusions, they are not binding upon this court. Dorman v. Osmose, Inc., 782 N.E.2d 463, 466 (Ind. Ct. App. 2003). However, the findings facilitate our review by providing valuable insight into the court's decision. Id. If the trial court's summary judgment can be sustained on any theory or basis in the record, we must affirm. Id.

The Homeowners' Association contends that the trial court erred when it granted summary judgment in favor of Heide and Wilkerson on the Association's counterclaim. Specifically, the Association asserts that the trial court erred when it concluded that "restrictive covenants of a planned unit development have the status of a zoning ordinance" and that, because a zoning ordinance may not prohibit the operation of a child care home in the operator's residence, neither may such a restrictive covenant be enforced where the restrictive covenant has been adopted in a PUD ordinance. See Appellant's App. at 13. We agree with the Association that the planned unit development ordinance has no effect on the Association's authority to enforce the private restrictive covenants at issue.

9

The creation of a planned unit development is a legislative act and PUD provisions are zoning ordinances.[4]  Story Bed & Breakfast, LLP v. Brown County Area Plan Comm'n, 819 N.E.2d 55, 64 (Ind. 2004) (citation omitted).  Restrictive covenants and zoning ordinances, including planned unit development ordinances, are tools used to restrict the use of real property.  Our supreme court has described restrictive covenants as follows:

> "A restrictive covenant is an agreement between a grantor and a grantee in which the latter agrees to refrain from using his property in a particular manner." Johnson v. Dawson, 856 N.E.2d 769, 772 (Ind. Ct. App. 2006). Restrictive covenants have also been described as " 'restrictions arising out of agreements between private parties who, in the exercise of their constitutional right of freedom of contract, can impose whatever lawful restrictions upon the use of their lands that they deem advantageous or desirable.' " Ogden v. Premier Properties, USA, Inc., 755 N.E.2d 661, 667 (Ind. Ct. App. 2001) (quoting 5 Edward H. Ziegler, Jr., RATHKOPF'S THE LAW OF ZONING AND PLANNING § 57.02 at 57-3 (2001)). This is in contrast to restrictions on land use imposed by a governmental zoning body, which are " 'imposed by the municipality for the public welfare . . . .' " Id.

Beineke v. Chem. Waste Mgmt. of Ind., LLC, 868 N.E.2d 534, 538 (Ind. 2007).  And Indiana Code Section 36-7-4-601(d)(1) clarifies that legislative bodies use zoning ordinances to establish districts for particular land uses, such as agricultural, commercial, industrial, or residential uses. Zoning ordinances also "regulate how real property is developed, maintained, and used" in each district.  Ind. Code § 36-7-4-601(d)(2).

This court described the difference between zoning ordinances and restrictive covenants in Suess v. Vogelgesang, 151 Ind. App. 631, 281 N.E.2d 536 (1972).  The court held that the "issuance of a variance grant is not invalid merely because utilization

---

[4]  Because planned unit development ordinances are zoning ordinances, our references to zoning ordinances in the remainder of the opinion apply equally to planned unit development ordinances.

of the grant may be in violation of private restrictive covenants." Id. at 544. The court also observed that "[i]t is quite well established, in Indiana as elsewhere, that zoning ordinances and laws cannot relieve real estate from valid private restrictive covenants." Id. at 541 (citation omitted). And the court further stated that "[z]oning regulations and private restrictions do not affect each other." Id. at 542 (citation and internal quotation marks omitted).

> "The zoning restrictions imposed upon a property owner's land are the measure of his obligations to the community; the private covenant is merely an indication of the measure of his obligation to a private party, which may or may not be enforceable but which cannot, in either event, affect the necessity of conforming to the comprehensive plan set forth in the ordinance."

Id. at 543-44 (quoting 3 Rathkopf, The Law of Zoning and Planning, § 74-1 et seq. (omission in original).

Suess involved the grant of a variance that was contrary to existing restrictive covenants. While the facts and specific holding of Suess are not applicable in this case, the reasoning applies. Here, the trial court held that when the Declaration was incorporated in the PUD ordinance, the restrictive covenants contained in the Declaration acquired "the status of a zoning ordinance" and that the PUD ordinance superseded the restrictive covenants, which lost their private character. Appellant's App. at 13. That conclusion is contrary to law. As explained in Suess, restrictive covenants are agreements between private parties and are enforceable by those parties. Zoning ordinances, such as the planned unit development ordinance at issue here, arise from an exercise of the government's police power and have no effect on restrictive covenants, which set out the rights and obligations of private parties to each other.

11

The question presented in this case is whether the Homeowners' Association may enforce restrictive covenants against the operation of a child care home in Benjamin Crossing when the Building Commission is prohibited by Indiana Code Section 36-7-4-1108 from enforcing those same provisions in the planned unit development ordinance. The statute provides, in relevant part:

(a) This section applies only to a child care home that is used as the primary residence of the person who operates the child care home.

(b) As used in this section, "child care home" has the meaning set forth in IC 12-7-2-28.6.

(c) Except as provided in subsection (e), a zoning ordinance may not do any of the following:

(1) Exclude a child care home from a residential area solely because the child care home is a business.

(2) Impose limits on the number of children that may be served by a child care home at any one (1) time that vary from the limits set forth in IC 12-7-2-33.7 and IC 12-7-2-33.8.

(3) Impose requirements or restrictions upon child care homes that vary from the requirements and restrictions imposed upon child care homes by rules adopted by the division of family resources or the fire prevention and building safety commission.

Ind. Code § 36-7-4-1108 (emphasis added). A "child care home" is defined as

a residential structure in which at least six (6) children (not including the children for whom the provider is a parent, stepparent, guardian, custodian, or other relative or any child who is at least fourteen (14) years of age and does not require child care) at any time receive child care from a provider:

(1) while unattended by a parent, legal guardian, or custodian;

(2) for regular compensation; and

(3) for more than four (4) hours but less than twenty-four (24) hours in each of ten (10) consecutive days per year, excluding intervening Saturdays, Sundays, and holidays.

Ind. Code § 12-7-2-28.6.

The trial court found that the Declaration was "not merely a private contract but in fact . . . part of a zoning order." Appellant's App. at 22. We cannot agree. The statutory prohibition under Indiana Code Section 36-7-4-1108 restricts the authority of a municipality when enacting or enforcing a zoning ordinance. The prohibition against a zoning ordinance barring the operation of a child care home in a residence is directed to the municipality and renders any such ordinance unenforceable by the municipality. On the other hand, the restrictive covenants in the Declaration set out the mutual obligations and rights of property owners to each other. Those restrictive covenants are enforceable by the private parties to the Declaration and were not vitiated by the adoption of the planned unit development ordinance that included them. See id. Thus, we hold that the restrictive covenants did not cease to exist independently when they were adopted and included in the planned unit development ordinance that established Benjamin Crossing. See Suess, 281 N.E.2d at 534-44.

In sum, we decline to hold that the County's approval of a PUD obviates the underlying contract right of the property owners, through the Homeowners' Association, to enforce the restrictive covenants against operation of a home day care in Benjamin Crossing. The restrictive covenant exists independent of the ordinance and may be enforced by the Association pursuant to the terms of the Declaration. Thus, the trial court erred when it concluded that Section 36-7-4-1108 prohibits the Association from

enforcing the restrictive covenant banning the operation of businesses in residences in Benjamin Crossing.[5]  As such, the trial court erred when it granted summary judgment in favor of Heide and Wilkerson on the Association's motion for summary judgment on its counterclaim.  We reverse the grant of summary judgment in favor of Heide and Wilkerson and remand with instructions for the trial court to enter summary judgment for the Homeowners' Association on its request for injunctive relief and for further proceedings to determine an award of damages, if any.

Reversed and remanded with instructions.

RILEY, J., and MAY, J., concur.

---

[5] In this case we interpret the operation and effect of a statute limiting the enactment and enforceability of a zoning ordinance.  There is no indication in the text of the statute suggesting that the legislature intended a local plan commission's adoption of a zoning ordinance to nullify the right of property owners to enforce covenants in common law subdivisions.  See Caesar's Riverboat Casino, LLC v. Kephart, 934 N.E.2d 1120, 123 ("There is a presumption that the legislature does not intend to make any change in the common law beyond those declared in either express terms or by unmistakable implication.") (citing South Bend Cmty. Schs. v. Widawski, 622 N.E.2d 160, 162 (Ind. 1993).