Tim GODBY, Defendant–Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 33S00–9807–CR–416.

Supreme Court of Indiana.

Oct. 5, 2000.

Caroline B. Briggs, Lafayette, Indiana, Attorney for Appellant.

Jeffrey Modisett, Attorney General of Indiana, Janet Brown Mallett, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

DICKSON, Justice

The defendant, Tim L. Godby, was convicted of murder[1] for the December 9, 1995 slaying of Jeffrey A. Asberry in New Castle, Indiana. We find that this appeal presents three issues: (1) admissibility of a taped conversation between the defendant and police; (2) propriety of juror conduct and court responses to jury questions; and (3) newly discovered evidence.

### Admissibility of Taped Conversation

The defendant contends that the trial court erroneously allowed into evidence a tape recording of his telephone conversations with police, made without Miranda warnings, while his residence was under police surveillance and a SWAT team was being organized. When this evidence was offered at trial, the defense declared: "Judge, the defendant has no objections." Record at 1683.

The defendant now argues that his objections were presented during hearings on a motion to suppress and motion in limine and at bench conferences during the trial. At the point during the trial where the defendant argues that the trial court concluded its ruling[2], the trial court stated:

So, if the State intends to use it, I feel that the entire statement should come in so that the jury hears it all, then decides what they want to make of it. I've considered Fifth Amendment issues, al-

---

1. IND.CODE § 35–42–1–1.

2. Brief of Appellant at 14.

though they weren't formally raised. It's – from my viewpoint in that regard, this is not a violation of the Defendant's Fifth Amendment right. In other words, the question being whether or not he needed to be Mirandized by Brown the minute the conversation started for anything else to be admissible. Two reasons, one, there was not a custodial interrogation as required by *Escobedo,* and secondly, the text of this is not an interrogation, period.... So, I would say that the statement comes in.

Record at 1200–01. Immediately after making this statement, at approximately 7:05 PM on Tuesday, April 15, 1997, the trial court recessed for the day. It was not until the following week, on Monday, April 21, 1997, that Exhibit 41, the tape recording of the defendant's telephone statements, was offered and received in evidence without objection.

■■■ A ruling on a motion in limine does not determine the ultimate admissibility of evidence; that determination must be made by the trial court in the context of the trial itself. *Clausen v. State,* 622 N.E.2d 925, 927 (Ind.1993). The purpose of the requirement for a timely objection is to alert the trial court and to permit prevention or immediate correction of an error without waste of time and effort. *Candler v. State,* 266 Ind. 440, 363 N.E.2d 1233, 1240 (Ind.1977). A party's failure to make a contemporaneous objection to evidence offered at trial precludes later appellate review of its admissibility. *Wise v. State,* 719 N.E.2d 1192, 1199 (Ind.1999). Regardless of the nature and content of the issues discussed at court hearings and bench conferences in this case, we find that the defendant's express disclaimer of any objection to the exhibit precludes our consideration of his claim on appellate review.[3]

3. The defendant argues that the absence of a full record of the colloquy at the bench conferences denied his right to appeal. This claim is of no avail, however, because we

### Jury Conduct and Questions

■■ The defendant seeks a new trial on grounds that the jury deliberations as a whole deprived him of the right to trial by jury and to be present at critical stages of the proceeding. He contends that two jurors failed to fully disclose their relationships to the victim's family and potential witnesses, that they infected other jurors with personal knowledge outside the evidence, and that the court improperly responded to juror questions during deliberations.

The defendant urges that implied bias should be found as to one of the jurors, William Dawes. The defendant argues that Dawes failed during voir dire to adequately disclose his knowledge of the victim's family, that Dawes subsequently lacked complete candor when he did disclose his knowledge, and that Dawes disclosed his personal knowledge to other jurors contrary to a specific court order.

During voir dire, the trial judge inquired whether prospective jurors knew persons listed as expected witnesses in the case. The witness list included several persons with the same last name as the deceased victim, Jeff Asberry. Jurors Dawes and Harry Councellor did not respond in the affirmative. Thereafter, during a lunch break within two days after the commencement of evidence, the bailiff advised that Dawes remained in the jury room and had requested to speak with the judge. The defendant had been taken to the jail for lunch, but his attorneys and the prosecutor were still available and agreed that all counsel would accompany the judge to confer with the juror. Dawes informed the judge and counsel that just that morning he recognized a male person, sitting with the decedent's family in the courtroom, as someone he had seen at the Chrysler plant, his place of employment. Dawes advised that he was not influenced by his

have determined that the content of these conferences is irrelevant in view of his express "no objections" to the tape recording.

recognition, was able to continue as a juror, and could render a fair and impartial verdict based solely upon the law and the evidence. Supplemental Record at 46. The defendant's attorneys were given an opportunity to question Dawes at this time. The judge then instructed Dawes not to discuss with other jurors the fact that he had been questioned or the fact of his knowledge of a possible member of the victim's family. *Id.* Upon the defendant's return from jail, the trial court requested defense counsel to discuss the matter with the defendant and to advise the court if the defense desired to make a record in open court regarding Dawes's revelations. After the defendant and his attorneys discussed the matter, the defense told the trial court that there was no need to bring Dawes into the courtroom for the purpose of making any record.

In support of his motion to correct error following the trial, the defendant presented the testimony of another juror, Joe Smith, to the effect that some jurors stated to other jurors in the jury room that they "knew of or knew" members of the Asberry family. Record at 2835. Smith testified that juror Councellor (a retired school teacher) "knew a lot more about the families and, that what we, you know, we knew he could tell us a lot more about the family, the troubles they been into and everything." *Id.* at 2836. Smith also stated that juror Dawes had seemed afraid of or worried about "the Asberrys that worked at Chrysler, 'cause he worked ... in there with them." *Id.*

█ The defendant argues that he was deprived of his right to a fair jury trial by the failure of Dawes and Councellor to disclose their knowledge and relationship

with the victim's family, and by Dawes speaking about it to other jurors in violation of the judge's instruction. The State acknowledges that the right to a jury trial includes "a fair trial by a panel of impartial, indifferent jurors." Brief of Appellee at 6 (citing *Turner v. Louisiana,* 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965)). The failure of a juror to disclose a relationship to one of the parties may entitle the prejudiced party to a new trial. *See Haak v. State,* 275 Ind. 415, 417 N.E.2d 321, 326 (Ind.1981) (juror's husband was seeking position in prosecutor's office); *Barnes v. State,* 263 Ind. 320, 330 N.E.2d 743 (Ind. 1975) (juror denied having friends or relatives on prosecutor's staff while married to second cousin of member of prosecutor's staff); *Block v. State,* 100 Ind. 357, 1885 WL 4222 (1885) (juror was a deputy prosecutor). To warrant a new trial upon a claim of juror misconduct, the defendant must show that the misconduct was gross and probably harmed the defendant.[4] *Carr v. State,* 728 N.E.2d 125, 131 (Ind. 2000). This determination is a matter within the trial court's discretion. *Lopez v. State,* 527 N.E.2d 1119, 1130 (Ind.1988).

Here, when first aware that juror Dawes knew or knew of one or more members of the Asberry family, the trial court immediately questioned Dawes in the presence of defense counsel and the prosecutor, but out of the presence of the other jurors. After affording counsel an opportunity also to question Dawes, and in the absence of any objection or challenge from defense, the trial court ruled that Dawes could continue to serve as a juror. This determination was not an abuse of discretion.

█ As to the claims of juror bias and misconduct by the alleged exposure of the

---

4. We note, however, that Indiana adheres to the common law rule that a verdict may not be impeached by evidence from jurors who returned it except when evidence shows that the jury was exposed to improper extrinsic material during its deliberation. *See Butler v. State,* 622 N.E.2d 1035, 1040 (Ind.Ct.App. 1993). Indiana Evidence Rule 606(b) restrains jurors from testifying "as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror" except as to drug or alcohol use by any juror or as to outside influence or extraneous prejudicial information improperly brought to the jury's attention.

other jurors to extrinsic prejudicial information from jurors Dawes and Councellor, we decline to reverse. Considering the totality of the evidence presented, and particularly the non-specific nature of the information allegedly known by Dawes and Councellor and communicated by these jurors to other jurors, and the lack of evidence that the alleged comments generally referring to Asberry families could reasonably have been understood by other jurors to refer to the victim or his immediate family, we conclude that there is no showing that the alleged misconduct was gross nor that it probably harmed the defendant. The trial court did not abuse its discretion in denying the defendant's motion to correct error as to juror bias or misconduct. The court's ruling on this issue is not clearly erroneous.

▇ The defendant also claims that his right to a jury trial was infringed by the court's failure to respond to jury questions during deliberations in accordance with statutory requirements. He further alleges that, by failing to respond to one of the jury notes, which stated that the jury was deadlocked, the court improperly implied to the jury that they would be required to deliberate until a verdict was reached.

During its deliberations, the jury made requests in the form of notes to the trial judge. The first note requested to review certain exhibits and transcripts. Record at 261. The judge and the parties decided to send a preprinted form asking whether the jury disagreed about the evidence they requested to see. *Id.* at 286. The jury returned the form checked "no" and made an additional request for different exhibits and the chance to listen to the tapes more closely. *Id.* at 262. After consultation and agreement of the parties, the judge responded, "I am, as a matter of law, precluded from granting your request." *Id.* at 263. A subsequent jury note advised: "We have a 10 to 2 deadlock to convict for murder. We have a 2 to 10 deadlock to convict for involuntary manslaughter. The disagreement is over intent to kill or

knowingly killing." *Id.* at 264. The court presented the jury's statement to the parties' counsel who agreed with the trial court that no response was required. The jury later asked "Can we get a legal definition of knowingly or intentional." *Id.* at 265. The judge, again with the parties' agreement, responded in writing: "Please read your instructions for these definitions." *Id.* Since the defendant agreed to these responses at trial, he may not now claim error on appeal. *Pendergrass v. State,* 702 N.E.2d 716, 720 (Ind.1998).

▇ The defendant also claims that his right to be present at all critical stages of his trial was violated when juror Dawes was privately interviewed by the trial court and counsel while the defendant was at lunch. In addition, he seeks reversal because of the absence of any express notation in the record that he was present when his counsel, the prosecutor, and the trial court resolved how to respond to the jury's note advising that they were deadlocked.

In *Ridley v. State,* 690 N.E.2d 177, 180 (Ind.1997), this Court addressed similar claims under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 13 of the Indiana Constitution. Applying the analyses in *Ridley,* we find that the defendant's alleged absences were not related to the presentation of witnesses or evidence and were essentially during non-substantive proceedings unrelated to the defendant's right of cross examination. The defendant has not demonstrated that any of these proceedings were critical to the outcome of the trial or that his presence would have contributed to the fairness of the procedure. None of the proceedings at issue occurred in the presence of the assembled jury or at any other critical proceeding. Notwithstanding the defendant's absence at lunch during the Dawes interview, his defense lawyers discussed the incident with him immediately upon his return and thereafter declined the trial court's invita-

tion to make any further record or objection. We find no error on this issue.

## Newly Discovered Evidence

The defendant contends that the trial court erred in denying his motion to correct error asserting that a new trial was warranted because of new evidence that had surfaced since the trial.

To obtain a new trial based on newly discovered evidence, a party must establish that: (1) the evidence was not available at trial; (2) it is material and relevant; (3) it is not cumulative; (4) it is not merely impeaching; (5) it is not privileged or incompetent; (6) due diligence was used to discover it in time for trial; (7) the evidence is worthy of credit; (8) it can be produced upon a retrial of the case; and (9) it will probably produce a different result. *State v. McCraney*, 719 N.E.2d 1187, 1190 (Ind.1999); *Fox v. State*, 568 N.E.2d 1006, 1007 (Ind.1991). The moving party has the burden of showing that the newly discovered evidence meets all nine prerequisites for a new trial. *Allen v. State*, 716 N.E.2d 449, 456 (Ind.1999). The denial of a motion predicated on newly discovered evidence is a discretionary ruling and is reviewed deferentially. *McIntyre v. State*, 717 N.E.2d 114, 128 (Ind. 1999). Our appellate review is guided by Indiana Trial Rule 52(A) which provides that the trial court's findings and judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

In his motion to correct error, the defendant asserted a claim of newly discovered evidence that one of the State's trial witnesses was mentally disabled and incompetent, and urged that this information would have changed the outcome of the trial. After extensive evidentiary hearings, the trial court denied the motion, finding that the allegedly impaired witness, though nervous and uneasy about testifying, gave logical responses, which were in many respects consistent with the testimony of other witnesses. The trial court found that, even if the records purporting to show that the witness had been determined to be mentally disabled at some prior time were admitted as evidence, "the effect if any, would relate only to the credibility of [the witness] and constitute only a portion of those matters which jurors might have taken into consideration in determining [the witness's] credibility." Record at 718–19. Having found unproven one of the required elements (that it is not merely impeaching), the trial court denied the defendant's claim of newly discovered evidence without addressing the other required elements. The defendant has not shown that the trial court's finding was clearly erroneous, nor has he shown that all the other eight elements were unequivocally established.

At the commencement of evidence on the motion to correct error, the defendant was permitted to orally amend the motion to add a further claim that Melissa English's information constituted newly discovered evidence. The trial court's order denying the motion to correct error did not expressly address this claim of newly discovered evidence. When a motion to correct error is denied, absent a request by the parties, there is no requirement that the trial court enter findings of fact. Ind. Trial Rule 52(A) & 59(J). "[A] general judgment will control as to the issues upon which there are no findings." *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind.1997).

The defendant claims that although Melissa English did not see the shooting, she saw another person run from the scene after the shooting and that while she did not see the fleeing person clearly, she knew the fleeing person was not the defendant because he was trying to break into a truck at the time. While this evidence addresses several of the nine required elements, the defendant has not shown that the record establishes the seventh and ninth elements—that her testimony was worthy of credit and that it would probably

produce a different result. English had in the past been convicted of forgery, and she only came forward after she had spoken with the defendant's mother about his conviction. The defendant has not established that the judgment of the trial court to deny his claim of newly discovered evidence was clearly erroneous. We decline to find error in the trial court's denial of the defendant's motion to correct error.

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and SULLIVAN, BOEHM, and RUCKER, JJ., concur.