**Mark DORMAN and Tracy Dorman, Appellants–Plaintiffs,**

v.

**OSMOSE, INC., Appellee–Defendant.**

**No. 53A04–0607–CV–374.**

Court of Appeals of Indiana.

Sept. 25, 2007.

David W. Stone IV, Stone Law Office & Legal Research, Anderson, David W. McCrea, McCrea & McCrea, Bloomington, IN, Attorneys for Appellants.

Robert L. Shuftan, David A. Kanter, Derek C. Smith, Wildman Harrold Allen & Dixon, Chicago, IL, Kendra Gowdy Gjerdingen, Lonnie D. Johnson, Mallor Clendening Grodner & Bohrer LLP, Bloomington, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Mark and Tracy Dorman appeal the denial of their motion to correct error following the verdict in favor of Osmose, Inc., on their amended complaint alleging negligence and strict liability. We affirm.

### Issues

The Dormans raise three issues, which we restate as follows:

I. Whether the Dormans waived their claim that the trial court abused its discretion in deciding not to replace a juror;

II. Whether the trial court abused its discretion in excluding certain language from Osmose's brief submitted in a prior appeal; and

III. Whether the trial court abused its discretion in instructing the jury on contributory negligence.

### Facts and Procedural History

On June 23, 1996, Mark, an independent contractor, was building a deck with lumber treated with chromated copper arsenate ("CCA"), a preservative and pesticide manufactured by Osmose to prevent decay from insects and fungus. Mark was wearing shorts that day. That afternoon, he accidentally struck his leg against a piece of freshly cut wood, and several splinters lodged in his right shin. A week later the wound was "oozing fluid and had become red, swollen, and very warm to the touch", and Mark sought medical treatment. *Dorman v. Osmose, Inc.*, 782 N.E.2d 463, 464 (Ind.Ct.App.2003), *trans. denied* ("*Dorman I*"). Dr. Thomas Eccles diagnosed Mark's wound as an abrasion with cellulitis and prescribed antibiotics. *Id.* at 465.[1] Over a year later, Mark's right leg became red, swollen, and painful to walk on. He was examined by Dr. Jerry Headdy, Jr., and was diagnosed with cellulitis with ascending lymphadenitis. *Id.*[2]

On June 30, 2000, Mark filed a complaint against Osmose alleging negligence and strict liability.[3] Appellants' App. at 53. On August 28, 2000, Osmose filed its answer, alleging, *inter alia*, that Mark was contributorily negligent and that the applicable statute of limitations had expired. On October 29, 2001, Mark filed a motion for permission to file an amended complaint to add Tracy as a plaintiff and her loss of consortium claim. On December 21, 2001, Osmose filed its answer to the amended complaint, again alleging contributory negligence and expiration of the statute of limitations.

On January 15, 2002, Osmose moved for summary judgment, arguing that the Dormans' claims were barred by the applicable statute of limitations.[4] On April 24, 2002, the trial court granted Osmose's summary judgment motion. The Dormans appealed. On January 31, 2003, this Court reversed the summary judgment ruling in favor of Osmose, finding that the Dormans' claims were not barred by the statute of limitations, and remanded the case for further proceedings. *Dorman*, 782 N.E.2d 463.

On January 24, 2006, the Dormans filed a motion asking the trial court to declare certain statements of the appellate brief Osmose submitted in *Dorman I* as evidentiary admissions. On January 30, 2006, the trial court denied the motion.

On January 31, 2006, trial commenced. That day, the jury was selected, the trial court read preliminary instructions, and both parties made opening statements. The following morning, the Dormans began their presentation of evidence. During the morning recess, the trial court had a conversation with juror number 5.[5] The

---

1. Cellulitis is the "diffuse and especially subcutaneous inflammation of connective tissue." Merriam–Webster Online, http://m-w.com/dictionary/cellulitis (last visited Aug. 28, 2007).

2. Lymphadenitis is the "inflammation of lymph nodes." Merriam–Webster Online, http://m-w.com/dictionary/lymphadenitis (last visited Aug. 28, 2007).

3. Mark's complaint named two other defendants, but those claims were settled prior to trial.

4. *See* Ind.Code § 34–20–3–1 (providing that a product liability action must be commenced within two years after the cause of action accrues).

5. On August 24, 2006, the Dormans filed a motion to ·certify statement of evidence regarding the trial court's conversations with juror number 5. The trial court denied the motion and instead issued an affidavit pursuant to Indiana Appellate Rule 31(D). Appellants' App. at 364. This affidavit is the sole source of our recitation of the trial court's conversations with juror number 5.

"juror seemed upset, and told [the trial court] that he was concerned about the income he would lose during the trial, which we thought might take two weeks." Appellants' App. at 364. The juror also told the trial court that "after hearing the opening statements of counsel he had already decided who should prevail in the case." *Id.* The trial court informed the parties' attorneys of the conversation, and the Dormans' attorney "suggested releasing the juror." *Id.* at 365; Appellants' Br. at 4. The trial court decided to talk to the juror again the next day to see if he was still upset.

When the trial court spoke with the juror the next day, the "juror was no longer upset and seemed to be in a normal frame of mind." Appellants' App. at 365. The juror told the trial court that he had learned that his employer would pay him for the time he served on the jury. *Id.* Although the trial court could not remember exactly what was said, it thought that the juror said that "he was able to keep an open mind and evaluate the evidence." *Id.* The trial court then discussed this conversation with the parties' attorneys. The trial court believed that the Dormans' attorney still thought that the juror should be replaced, but was not positive if the memory of the attorney's opinion came from this conversation or the conversation of the day before. *Id.* The trial court did not replace the juror number 5, who continued to serve on the jury.

On February 8, 2006, the trial court gave final instructions to the jury, including an Indiana Pattern Jury Instruction on the issue of contributory negligence over the Dormans' objection. Later that day, the jury returned a verdict in favor of Osmose. The verdict stated:

> We, the Jury, find that [Osmose] was not at fault, or that Mark Dorman's fault exceeds fifty percent (50%) of the total

fault, or that [Osmose's] fault was not a proximate cause of Plaintiff Mark Dorman's injuries and damages. Therefore, we find for the Defendant Osmose, Inc. and against the Plaintiff Mark Dorman on the Plaintiff's complaint.

*Id.* at 44–45. On March 9, 2006, the Dormans filed a motion to correct error, which the trial court denied. The Dormans appeal.

## Discussion and Decision

### I. Decision Not to Replace Juror

■ The Dormans challenge the trial court's decision not to replace juror number 5. The trial court's decision whether to replace a juror before jury deliberations begin is reviewed for an abuse of discretion. *Scott v. State*, 829 N.E.2d 161, 167 (Ind.Ct.App.2005); *LeFlore v. State*, 823 N.E.2d 1205, 1208 (Ind.Ct.App.2005); *Slate v. State*, 798 N.E.2d 510, 517 (Ind.Ct. App.2003). Indiana Trial Rule 47(B) provides, in pertinent part, "Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury returns its verdict, become or are found to be unable or disqualified to perform their duties."

Osmose contends that the Dormans failed to preserve this issue for appellate review. Osmose argues that the Dormans never moved to strike juror number 5 and never moved for a mistrial, and therefore the issue is waived. *See Short v. State*, 443 N.E.2d 298, 306 (Ind.1982) ("Objections relating to the qualification of a juror must be timely made or they are waived."); *Hall v. Eastland Mall*, 769 N.E.2d 198, 204 (Ind.Ct.App.2002) (noting that revelations made by jury members during trial that are addressed by trial court at that time with no objection by counsel are waived). The Dormans argue that the issue is not waived because the trial court was aware that the Dormans wanted the

juror removed, and thus the purpose of requiring an objection was satisfied. *See Godby v. State,* 736 N.E.2d 252, 255 (Ind. 2000) ("The purpose of the requirement for a timely objection is to alert the trial court and to permit prevention or immediate correction of an error without waste of time and effort.").

While the record in the instant case shows that on January 31, 2006, the trial court knew that the Dormans' attorney thought that juror number 5 should be replaced, the trial court decided to talk to the juror the following day before making a determination as to whether to release the juror. On February 1, 2006, the record shows that the trial court did talk to the juror, who indicated that he could "keep an open mind and evaluate the evidence." Appellants' App. at 365. The record also shows that the Dormans did not formally object to juror number 5 that day, or anytime thereafter, and the Dormans themselves do not assert that they made any objection, formal or informal, when trial resumed on February 1. The trial court was simply not sure whether the Dormans' counsel still believed the juror should be replaced. *Id.* To preserve this issue for appeal, the Dormans were required to make an objection to the retention of juror number 5 when trial resumed and insure that the record clearly reflected their objection. They failed to do so. They have therefore waived this issue for our review.

■ Waiver notwithstanding, the Dormans' argument that the trial court abused its discretion in declining to remove juror number 5 must fail. The record shows that juror number 5 was upset the first day of trial because he thought the trial was going to last two weeks and did not think he would be paid during that time. Although the juror stated that he had decided who should prevail, there is no indi-

cation which side the juror favored. When the trial court talked to him the second day, the juror had learned that he would be paid by his employer and was "in a normal frame of mind." *Id.* At that time, he told the trial court that he could "keep an open mind and evaluate the evidence." *Id.* As such, we cannot say that the trial court's decision not to release the juror was an abuse of discretion.

## II. Evidentiary Admissions

■ The Dormans contend that the trial court erred in denying their motion to admit the following language from the appellate brief Osmose submitted in *Dorman I*: (1) "Whether the trial court correctly held that plaintiffs failed to raise a genuine issue of material fact as to whether more than two years before they filed suit, plaintiffs knew or should have known of their injuries and that they were wrongfully caused"; (2) "The Trial Court Correctly Determined That Based on the Undisputed Facts, Plaintiffs Knew of Their Injury and That it Was Caused by Treated Wood Two Years Prior to the Expiration of the Statute of Limitations"; (3) "Not only did Mr. Dorman experience a discernible injury at the time he smacked his leg against the treated wood, he knew 'without a doubt' that the symptoms were caused by the preservative in the wood"; (4) "Mr. Dorman not only suspected that his injury was caused by the splinter from treated wood, he was told that it was caused by the splinter from treated wood, a statement that was again reinforced to [Dorman] when he was told by Dr. Eccles that wood has nasty stuff in it"; (5) "Mr. Dorman knew that his injury was a result of splinters from treated wood and comments made to him during the course of his emergency room visit, in particular Dr. Eccles's comment that treated wood has nasty stuff in it, confirmed this knowl-

edge"; (6) "Mr. Dorman knew that the splinters came from treated wood, he knew that the splinters caused his injury, he was told by his physician that treated wood has nasty stuff in it, but he never took any further steps including reviewing the end-tags which he had in his possession to determine whether he had a cause of action." Appellants' App. at 143–63, 169–70; Appellants' Br. at 10–11.

■ We review a trial court's admission or exclusion of evidence for an abuse of discretion. *Reliable Dev. Corp. v. Berrier,* 851 N.E.2d 983, 987 (Ind.Ct.App. 2006); *Fairfield Dev., Inc. v. Georgetown Woods Sr. Apts. Ltd. P'ship,* 768 N.E.2d 463, 466 (Ind.Ct.App.2002), *trans. denied.* Thus, we will reverse only where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn from those facts and circumstances. *Jamrosz v. Resource Benefits, Inc.,* 839 N.E.2d 746, 754 (Ind.Ct.App.2005) (quotation omitted).

The Dormans insist that the identified language constitutes admissions that Mark's injuries came from CCA-treated wood and that such admissions are not hearsay pursuant to Indiana Evidence Rule 801(d)(2)(A). Hearsay is generally not admissible. Ind. Evidence Rule 802. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c). "A 'statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." Ind. Evidence Rule 801(a). However, Indiana Evidence Rule 801(d)(2)(A) provides in relevant part that a statement is not hearsay if

[t]he statement is offered against a party and is (A) the party's own statement, in either an individual or representative capacity; or (B) a statement of which the party has manifested an adoption or belief in its truth; or (C) a statement by a person authorized by the party to make a statement concerning the subject; or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship[.]

To bolster their argument, the Dormans cite *Indiana State Highway Commission v. Vanderbur,* 432 N.E.2d 418, 422 (Ind.Ct. App.1982), in which another panel of this Court noted that, "any statement made or attributed to a party which constitutes an admission against his or her interest and tends to establish or disprove a material fact in the case is competent evidence against that party." We acknowledge this principle, but the language the Dormans sought to have admitted does not constitute factual assertions.

First, we observe that Osmose's summary judgment motion was premised on a statute of limitations argument. The statute of limitations applicable to the Dormans' claims began "to run from the date the plaintiff knew or should have discovered that [he] suffered an injury or impingement, and that it was caused by the product or act of another." *Dorman I,* 782 N.E.2d at 466 (quotation omitted). Accordingly, to determine when the statute of limitations began to run in this case, it was necessary to consider when Mark knew or should have known that his injury was caused, assuming that it was, by his exposure to CCA. In other words, the essence of Osmose's argument was that even if all of Dormans' allegations were true,

the time period within which to initiate the suit had expired. Appellee's App. at 1–16. The statements identified by the Dormans all refer to Mark's state of mind, that is, what Mark believed about the source of his injury. Furthermore, in its motion for summary judgment, Osmose specifically denied that CCA was the medical cause of Mark's claimed injury and noted that causation was not at issue for purposes of their summary judgment motion. *Id.* at 2. In its *Dorman I* appellate brief, Osmose also stated that it denied all the material allegations in the Dormans' complaint. Appellants' App. at 143. We conclude that the identified portions of Osmose's brief do not constitute assertions of fact, and they therefore are not statements admissible pursuant to Indiana Evidence Rule 801(d)(2)(A).[6] Accordingly, the trial court did not abuse its discretion in denying the Dormans' motion to admit Osmose's statements in its *Dorman I* appellate brief.

### III. Jury Instructions

■■■■ Finally, the Dormans argue that the trial court abused its discretion in instructing the jury on contributory negligence. The purpose of jury instructions is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict. *Blocher v. DeBartolo Prop. Mgmt., Inc.,* 760 N.E.2d 229, 235 (Ind.Ct.App. 2001), *trans. denied* (2002). "In reviewing a trial court's decision to give or refuse a tendered instruction, this Court considers whether the instruction (1) correctly states the law, (2) is supported by the evidence in the record, and (3) is covered in substance by other instructions." *Wal–Mart Stores, Inc. v. Wright,* 774 N.E.2d 891, 893 (Ind. 2002); *Davenport v. State,* 749 N.E.2d 1144, 1150 (Ind.2001). If the challenge to a jury instruction is that it does not correctly state the law, we will review the instruction de novo, but if the challenge is that the instruction is not supported by the evidence in the record or that the substance is not covered by other instructions, we will reverse only if the trial court has abused its discretion. *Wright,* 774 N.E.2d at 893–94.

Here, the Dormans contend that the evidence did not support an instruction on contributory negligence. The jury instruction challenged by the Dormans states,

> [Osmose] contends that the [Dormans'] damages and injuries were caused by the negligence of Plaintiff,

6. Because the language here does not constitute assertions of fact but are descriptions regarding Mark's state of mind as to whether CCA-treated wood caused his injury, this case is distinguishable from the cases cited by the Dormans in which statements in briefs were held to be admissible: *In re Southeast Banking Corp.,* 855 F.Supp. 353, 357 n. 2 (S.D.Fla. 1994) (holding that Trustee's statement in a previously filed brief that Trustee could bring claims accruing on or after September 20, 1987 was a judicial admission by the Trustee that statute of limitations precluded all claims arising before that date); *Kurek v. Pleasure Driveway and Park Dist. of Peoria, Ill.,* 557 F.2d 580, 595 n. 13 (7th Cir.1977) (holding that defendant's statement in defendant's brief that a case upon which it was relying was pending on appeal was a judicial admission of that fact), *vacated by* 435 U.S. 992, 98 S.Ct. 1642, 56 L.Ed.2d 81 (U.S.Ill.1978); *Mitchell Engineering Co., A Div. of CECO Corp. v. Summit Realty Co.,* 647 S.W.2d 130, 141–42 (Mo.App.1982) (holding that Summit's adoption of the facts set forth in Mitchell's brief was admissible); *Purgess v. Sharrock,* 33 F.3d 134, 143–44 (2nd Cir.1994) (holding that, even though lawyer stated that it was a mistake, district court did not err in admitting lawyer's statement in memorandum of law that Purgess was involved in "one incident of asy[s]tole, one incident where a patient received a black eye and a cut eyelid, and one incident where Purgess applied a regional block to the wrong shoulder").

Mark Dorman. Contributory negligence is the failure of a Plaintiff to use reasonable care, when that failure contributes to the loss Plaintiff claims and is a proximate cause of such loss. [Osmose] has the burden to prove by a preponderance of the evidence that Plaintiff, Mark Dorman, was negligent.

Appellants' App. at 282. The Dormans also take issue with the trial court's instruction on the apportionment of damages, which stated in relevant part,

Next, if [Osmose] is not at fault or if Plaintiff Mark Dorman's fault is greater than 50 percent, then you must return your verdict for [Osmose] and against the [Dormans]; and no further deliberation is required.

*Id.* at 302.

■ "Contributory negligence is conduct on the part of the plaintiff, contributing as a legal cause to the harm he has suffered, which falls below the standard to which he is required to conform for his own protection." *Peavler v. Bd. of Comm'rs of Monroe County,* 557 N.E.2d 1077, 1080 (Ind.Ct.App.1990) (citing Restatement (Second) of Torts § 463 (1977)); *Havert v. Caldwell,* 452 N.E.2d 154, 158 (Ind.1983). A plaintiff must exercise that degree of care that a reasonably careful and prudent person would exercise in like or similar circumstances. *Get–N–Go v. Markins,* 550 N.E.2d 748, 751 (Ind.1990). Further, the plaintiff's negligence must either be the proximate cause or a concurring or co-operating proximate cause of the plaintiff's injury. *Peavler,* 557 N.E.2d at 1080.

Specifically, the Dormans argue that because Osmose claimed that its product was not dangerous and did not provide a warning to wear long pants when working with CCA-treated wood, Mark cannot be contributorily negligent for not taking precautions to avoid splinters from wood treated with CCA. The Dormans claim that "[t]here was no claim by Osmose that the injuries sustained by Mr. Dorman would have occurred from untreated splinters." Appellants' Br. at 21.

Osmose responds that the evidence supports a jury instruction on contributory negligence because there is evidence in the record that shows (1) any type of wood splinter could have caused Mark's injuries; (2) Mark knew that to avoid splinters he should wear long pants; and (3) Mark failed to wear long pants. We agree with Osmose.

Our review of the record shows that Dr. Matthew A. Paramenter testified that any foreign body that punctures the skin and remains in the wound could cause cellulitis. Tr. at 50. Dr. Thomas G. Slama testified that cellulitis could be caused by bacteria, fungi, viruses, thermal injury, freezing trauma, as well as foreign objects. *Id.* at 61–62. He added that wood produces more inflammation than glass or metal. *Id.* Dr. Philip S. Guzelian testified that a wood splinter of any kind, whether treated or not, can cause acute infections such as that experienced by Mark. *Id.* at 148. He also testified that "there aren't any published reports that I can find that, that inform us as a matter of scientific observation that a CCA treated splinter is somehow different in terms of its toxic potential then [sic] is an untreated wood splinter." *Id.* at 161.

In addition, Mark testified that he had worked with pressure treated wood eighty or ninety times beginning in high school. *Id.* at 3. He testified that he had been taught to keep his arms and legs covered while working with wood to protect against

splinters. *Id.* at 18. He further testified that when he worked for Indiana University, he had not only been admonished not to wear short pants, but he had also been specifically forbidden to wear shorts on the job. *Id.*[7] Finally, there is no dispute that Mark did not wear long pants the day splinters from the CCA-treated wood punctured his skin.

The Restatement (Second) Torts § 466 (1965) sets forth two types of contributory negligence:

> The plaintiff's contributory negligence may be either
>
> (a) an intentional and unreasonable exposure of himself to danger created by the defendant's negligence, of which danger the plaintiff knows or has reason to know, or
>
> (b) conduct which, in respects other than those stated in Clause (a), falls short of the standard to which the reasonable man should conform in order to protect himself from harm.

The Dormans argue that the evidence does not support the type of contributory negligence described in paragraph (a). However, paragraph (a) is inapplicable to the facts. Rather, we think the evidence here presents a situation that fits squarely into paragraph (b). *See Peavler*, 557 N.E.2d at 1081 ("It is sufficient if the injury resulting from [plaintiff's] failure to exercise ordinary care is such as was usual and therefore might have been expected."). Accordingly, we conclude that the evidence in the record supports a jury instruction on contributory negligence and therefore the tri-

al court did not abuse its discretion in so instructing the jury.

Affirmed.

BAKER, C.J., and FRIEDLANDER, J., concur.

---

7. The record before us includes a trial transcript dated February 1, 2006, to February 8, 2006. It does not include a transcript of the January 31, 2006 trial proceedings when Mark began testifying. On February 1, 2006, Osmose began its cross-examination of Mark.

Apparently, Mark provided specific information regarding his job for Indiana University during his direct examination, but based on his cross-examination, we think it reasonable to infer that he had a construction job at the University.