**LINCOLN BANK, Appellant,**

v.

**CONWELL CONSTRUCTION, Hedger Construction, Inc., Mitchell Construction, Inc., The Nichols Group, L.L.C., Grady Brothers, Inc., Daniel P. Nichols, Rebecca S. Nichols, Philip D. Nichols and Jennifer Nichols, Appellees.**

**No. 41A01–0812–CV–575.**

Court of Appeals of Indiana.

Aug. 10, 2009.

James B. Chapman II, Dann Pecar Newman & Kleiman, P.C., Indianapolis, IN, Attorney for Appellant.

Robert M. Frye, Mary F. Schmid, Stewart & Irwin, P.C., Indianapolis, IN, Attorneys for Appellees, Conwell Construction, Hedger Construction, Inc., and Mitchell Construction, Inc.

Terrence L. Brookie, Julia Blackwell Gelinas, Brian M. Falcon, Frost Brown Todd LLC, Indianapolis, IN, Attorneys for Appellees, Grady Brothers, Inc.

**OPINION**

BAILEY, Judge.

**Case Summary**

This dispute concerns a real estate developer and its five creditors. Lincoln Bank appeals the trial court's order in which it concluded that Lincoln Bank's mortgage was merely equal in priority to four mechanic's liens. We reverse and remand with instructions, holding that the mortgage has priority over the mechanic's liens.

## Issue

Lincoln Bank raises two issues. In light of our holding regarding the first, we need not reach the second.[1] The dispositive issue is whether the trial court erred in concluding that the mortgage and the four mechanic's liens were equal in priority.[2]

## Facts and Procedural History

The Nichols Group, L.L.C. ("Nichols Group") owned land in Johnson County, Indiana and sought to develop it for single-family homes. It platted the land as a residential subdivision. To fund the development, Nichols Group obtained a mortgage loan from Lincoln Bank. Nichols Group then contracted with a sole proprietorship, Conwell Construction ("Conwell"), to develop the site. Their agreement provided that the "project consists of the construction of improvements, infrastructure and structure(s)" and that Conwell would furnish "construction plans locating all storm, sanitary, and water utilities." Appendix at 36, 44. In an affidavit, Todd Conwell described the project as "mass earth work and installation of infrastructure necessary to develop certain real estate ... into a residential subdivision," including "earthwork," "storm sewer," "sanitary sewer," "water," "underdrains," "cone, curb," and "stone / asphalt paving." *Id.* at 128, 136. In turn, Conwell retained three subcontractors, Hedger Construction, Inc. ("Hedger") for concrete curbs and gutters, Mitchell Construction Inc. ("Mitchell") for subsurface curb drains, and Grady Brothers, Inc. ("Grady") for asphalt paving.

Lincoln Bank recorded its mortgage in 2006. After a dispute arose, the four construction companies each filed mechanic's liens on the property in 2007. As of the date of the order appealed herein, no residences had yet been constructed.

Conwell, Hedger, and Mitchell ("Plaintiffs") sued Nichols Group for non-payment and foreclosure of their mechanic's liens, also naming Lincoln Bank and Grady as defendants. Nichols Group counterclaimed.[3] Grady filed claims against the other five parties. Lincoln Bank also filed claims against the other five parties, as well as the guarantors of the Nichols Group mortgage.

The Plaintiffs moved for summary judgment on their mechanic's liens. During a hearing on the motions, Lincoln Bank asked the trial court to "find that Lincoln Bank has priority on the real estate," but it did not move orally or in writing for summary judgment. Transcript at 15. On November, 12, 2008, the trial court granted the Plaintiffs' motions for summary judgment. It then issued a "Judgment Order," in which it:

distributing some of the sale proceeds, the trial court ordered the Clerk "to hold [them] for the benefit of the parties and *subject to the further order of this Court.*" Appendix at 24 (emphasis added).

Nonetheless, the Judgment Order directed the Sheriff to sell the real estate and to pay the proceeds as specified. Therefore, it is an interlocutory appeal of right, pursuant to Indiana Appellate Rule 14(A)(1) (payment of money) and -(4) (sale of real estate).

3. Nichols Group did not file an appellate brief.

1. On appeal, Lincoln Bank also argues that the trial court erred in ordering the calculation of the creditors' pro rata shares, when only three of the five claims had been reduced to judgments.

2. The four mechanic's lienholders assert that this Court lacks jurisdiction to consider the appeal, arguing that the trial court's Judgment Order is neither a final appealable order nor an interlocutory appeal of right. We disagree. They are correct that the trial court entered judgment on some but not all of the claims and that the trial court omitted a finding of no just reason for delay. Moreover, in

- entered judgments of specific sums for Conwell, Hedger, and Mitchell; and
- ordered the Johnson County Sheriff to:
  - sell the real estate;
  - determine the five creditors' pro rata shares of the sale proceeds; and
  - distribute the proceeds of the sale as follows:

    (1) reimburse itself for the costs of the sale;

    (2) pay any property taxes due;

    (3) pay Conwell, Hedger, and Mitchell their pro rata shares of the sale proceeds; and

    (4) have the Johnson County Clerk hold the rest "if any sums remain."

App. at 19, 24. To determine the pro rata shares, the trial court directed the Sheriff to "total the Plaintiffs' *in rem* judgments and the amounts claiming to be due to Defendants Lincoln Bank and Grady Brothers, Inc. in their respective liens against said real estate." [4] *Id.* at 24.

Grady had acknowledged in the hearing that it was "not involved in th[e] motion directly." Tr. at 1. Eleven days after issuance of the appealed order, Grady moved for partial summary judgment.

Lincoln Bank now appeals, asserting that its mortgage had priority over the four mechanic's liens.

**Discussion and Decision**

Lincoln Bank argues that the trial court erred in entering summary judgment for the Plaintiffs and in applying Indiana Code Section 32–28–3–5(d). "[W]hen material facts are not in dispute, our review is limited to determining whether the trial court correctly applied the law to the undisputed facts." *Mills v. Berrios,* 851 N.E.2d 1066, 1070 (Ind.Ct.App.2006) (quot-

ing *Bennett v. CrownLife Ins. Co.,* 776 N.E.2d 1264, 1268 (Ind.Ct.App.2002)).

The interpretation of a statute is a question of law, to be reviewed de novo. *Porter Dev., LLC v. First Nat'l Bank of Valparaiso,* 866 N.E.2d 775, 778 (Ind.2007). Our goal is to give effect to the General Assembly's intent. *Id.*

> Our primary resource for this determination is the language used by the legislature, and thus our interpretation begins with an examination of the statute's language. We presume that the words of an enactment were selected and employed to express their common and ordinary meanings. Where the statute is unambiguous, the Court will read each word and phrase in this plain, ordinary, and usual sense, without having to resort to rules of construction to decipher meanings.

*Id.* (citations omitted). When a statute is susceptible to more than one interpretation, it is ambiguous and thus open to judicial construction. *Sees v. Bank One, Ind., N.A.,* 839 N.E.2d 154, 157 (Ind.2005).

Contractors and subcontractors may file a mechanic's lien, to the extent of the value of their labor and materials, for constructing, among other things, waterworks, drains, drainage ditches, sewers, and "any other earth moving operations." Ind.Code § 32–28–3–1. A mechanic's lien is equal in priority to other mechanic's liens. Ind. Code § 32–28–3–5(c).

A recorded mortgage has priority over a subsequently recorded mechanic's lien "to the extent of the funds actually owed to the lender for the specific project to which the lien rights relate." I.C. § 32–28–3–5(d) ("Subsection 5(d)"). There is no dispute that Lincoln Bank recorded its mortgage before the four mechanic's liens were

---

4. The trial court stayed its Judgment Order pending appeal.

recorded. Nor is there a dispute that the mortgage was "for the specific project to which the lien rights relate."

However, Subsection 5(d) does not apply, and therefore does not prioritize a mortgage over a mechanic's lien, for the development or construction of three categories of projects: (1) houses; (2) improvements auxiliary to houses; and (3) property controlled by a utility. Subsection 5(d) (second sentence). For these three categories, our Supreme Court's 1910 decision in *Ward v. Yarnelle* continues to provide that a mortgage and a mechanic's lien are equal in priority. *Ward v. Yarnelle*, 173 Ind. 535, 91 N.E. 7, 15 (1910), *overruled on other grounds by, Moore–Mansfield Constr. Co. v. Indianapolis, New Castle & Toledo Ry. Co.*, 179 Ind. 356, 101 N.E. 296, 300 (1913). *See also Harold McComb & Son, Inc. v. JPMorgan Chase Bank, N.A.*, 892 N.E.2d 1255, 1261–62 (Ind.Ct.App.2008). The *Ward* Court reasoned that where a mortgage is "for the purpose of raising funds to complete" a project and where the mortgagee and mechanic's lienholders have notice of each other's interests, "[t]hey all engaged in a common enterprise, and none of them [is] in a situation to claim priority; their equities are equal." *Ward*, 91 N.E. at 15. Thus, if Subsection 5(d) applies, Lincoln Bank's mortgage has priority over the four mechanic's liens; if not, the five creditors' interests are equal in priority.

*One- and two-family homes ("Subdivision 5(d)(1)")*. The first exception to Subsection 5(d) is a contract for the development or construction of a "Class 2 structure," defined as a "building or structure that is intended to contain or contains only one (1) dwelling unit or two (2) dwelling units," but not other structures such as those for three or more tenants. Subdivision 5(d)(1); and Ind.Code §§ 22–12–1–4 and –5. Here, the trial court concluded that Subsection 5(d) did not apply and therefore Lincoln Bank's mortgage did not hold priority over the mechanic's liens because preparing the land constituted the "development" of homes. We disagree. There is a difference between the expertise, materials, and tools required to prepare land for development and those necessary to build a home. There is no dispute that the four mechanic's lienholders worked to prepare the land for a residential subdivision, including moving earth, installing curbs and gutters, installing sanitary and storm sewers, and paving. No houses were built. Subsection 5(d) references Class 2 structures and improvements thereto, as discussed below. While related, they are not synonymous. Thus, the plain language of Subsection 5(d) indicates that the work in this case did not constitute the development of a house and that this exception is not applicable here.

*Property owned, operated, managed, or controlled by a utility ("Subdivision 5(d)(3)")*. Another exception to Subsection 5(d) is a contract for the development or construction of property (1) "owned, operated, managed, or controlled by" a state-regulated utility and (2) intended for, among other things, the transmission of water. Subdivision 5(d)(3). Some of the work pertained to sanitary and storm sewers. There was evidence in the designated materials to suggest that Conwell "had to coordinate the installation and required inspections of utilities with Bargersville Utilities and Johnson County REMC, and [Conwell was] at the mercy of their schedules." App. at 133–34. Beyond this, the mechanic's lienholders cite no additional designated evidence regarding the activities of state-regulated utilities. Conwell, Hedger, and Mitchell assert that the "subdivision developer typically installs such infrastructure, which is then dedicated to public use and turned over to the appropri-

ate municipal and other public utility." Appellee's Brief of Conwell, Hedger, and Mitchell at 18 n. 11. This record supports the inference that utility companies were inspecting the development, but that control had not yet been turned over to state-regulated utilities. Such does not establish that a utility company "owned, operated, managed, or controlled" the property. To the contrary, it is axiomatic that a utility would not insist on inspections of that which it managed or controlled. Accordingly, we conclude that Subdivision 5(d)(3) is also inapplicable to the instant dispute.

*"An improvement on the same real estate auxiliary to a Class 2 structure" ("Subdivision 5(d)(2)").*

Finally, we consider the key inquiry in the case-the third and last exception to Subsection 5(d)'s prioritizing mortgages over mechanic's liens. Subsection 5(d) does not apply to a contract for the development or construction of an "improvement on the same real estate auxiliary to a Class 2 structure." Subdivision 5(d)(2).

The mechanic's lienholders rely upon two cases which are inapposite, *Harold McComb* and *Provident Bank v. Tri-County Southside Asphalt, Inc.* In *Provident Bank,* the mortgage was recorded more than six months before the mechanic began work. Thus, the *Provident Bank* majority and dissent agreed that Subsection 5(d) did not apply because the mortgage was not "for the specific project to which the lien rights relate." *Provident Bank v. Tri-County Southside Asphalt, Inc.,* 804 N.E.2d 161, 163–64, 169 (Ind.Ct. App.2004), *reh'g granted on other grounds by,* 806 N.E.2d 802 (Ind.Ct.App.2004), *trans. denied.* And while Subsection 5(d) contained "the decisive language" in *Harold McComb,* the parties agreed that the 100–unit apartment complex in that case was not a Class 2 structure. *Harold*

*McComb,* 892 N.E.2d at 1259–60 n. 4. Thus, neither *Provident Bank* nor *Harold McComb* provides guidance to the facts herein.

"Improvement" is not defined for purposes of the mechanic's lien statute. Indiana Code Section 32–28–3–1(a) states that a contractor may have a lien for waterworks, drains, drainage ditches, sewers, and "any other earth moving operations." Meanwhile, Black's Law Dictionary defines improvement as an "addition to real property, whether permanent or not; esp., one that increases its value or utility." BLACK's LAW DICTIONARY 761 (7th ed.1999). The work performed by the mechanic's lienholders in this case involved earth moving operations and installation of the assets named above, which presumably added value and/or utility to the real estate. Accordingly, the contracts were for the construction or development of improvements.

However, we cannot conclude that the work performed was "auxiliary to a Class 2 structure." As noted above, no home had yet been constructed on the land. Before construction of the structures was started, there was no certainty that the land would ultimately be used for the stated purpose, single-family dwellings. Considering these improvements to be "auxiliary to a Class 2 structure" would create ambiguity and could lead to inconsistent results when real estate developers revise their plans in the early stages of a project. We doubt that the General Assembly intended this result. Furthermore, in referencing Class 2 structures in Subsection 5(d), the General Assembly distinguished plainly between development for commercial uses, industrial uses, condominiums, and apartments as opposed to homes and duplexes. The former are larger projects and would usually be owned by an entity about which the contractors could make informed decisions

regarding the risk of non-payment. In contrast, homes and improvements thereto are far more likely to be owned by individuals, a context in which it may be more difficult to assess the risk of non-payment. Thus, we conclude that Subdivision 5(d)(2) is unambiguous and does not apply to preparing land for the subsequent construction of houses.

Even if we were to deem Subdivision 5(d)(2) as ambiguous, we would reach the same conclusion. The basis of the current language in Subdivisions 5(d)(1), (2), and (3) was first enacted in 1999, as what was then Indiana Code Section 32–8–3–5(c)(1) and (2). 1999 Ind. Acts, Pub.L. No. 53–1999, § 3. Subdivision 32–8–3–5(c)(1) included Class 2 structures, as well as the language currently found in Subdivision 5(d)(2), improvements auxiliary thereto.

In 2002, the General Assembly recodified Title 32 so that it would be "clear, concise, and easy to interpret and apply." Ind.Code § 32–16–1–2. The recodification was not intended to affect any rights or liabilities. Ind.Code § 32–16–1–4; *see also Burd Mgmt., LLC v. State*, 831 N.E.2d 104, 107–08 (Ind.2005). Essentially, the General Assembly revised the mechanic's lien statute from paragraph-based to the current format. In that process, a "Class 2 structure" and an "improvement on the same real estate auxiliary to a Class 2 structure" were changed from a single subdivision to two subdivisions. 2002 Ind. Acts, Pub.L. No. 2–2002, § 13. Based upon the General Assembly's stated purpose for the recodification, we do not regard this change as substantive. Therefore, while the language regarding improvements is now an independent subdivision, in prior property law it was simply an extension of the Class–2–structure category. We therefore decline to regard Subdivision 5(d)(2) as changing how the statute

treats an entire segment of economic activity.

A 2003 revision of the mechanic's lien chapter is also revealing. Indiana Code Section 32–28–3–1(e) states that certain construction contracts may include no-mechanic's lien provisions. As of the 2002 recodification, this list consisted precisely of the same categories as those found in Subdivisions 5(d)(1), (2), and (3)—Class 2 structures, improvements thereto, and utility property. In 2003, the General Assembly specified that mechanic's liens could also be prohibited in construction contracts "to prepare property for Class 2 residential construction," a phrase that describes exactly the earth-moving, paving, and sewer work in this case. However, the General Assembly conspicuously omitted to insert this phrase as an exception to Subsection 5(d)'s preference of mortgages over mechanic's liens. There is "a strong presumption that when the legislature enacted a particular piece of legislation, it was aware of existing statutes relating to the same subject." *Wagler v. W. Boggs Sewer Dist., Inc.*, 898 N.E.2d 815, 818 (Ind.2008) (quoting *Poehlman v. Feferman*, 717 N.E.2d 578, 582 (Ind.1999)). Had the General Assembly intended to exclude the development of real estate for Class 2 construction, it would have placed this language in Subsection 5(d). It did not do so. If and to the degree that Subsection 5(d) is ambiguous, the 2002 recodification and the 2003 amendment clarify the intent of the General Assembly.

For these reasons, we conclude that the trial court erred in ordering the five creditors to share equally in the foreclosure proceeds. Instead, the first priority is to satisfy Lincoln Bank's mortgage. After that, the four mechanic's liens are equal in priority. We therefore remand with instructions to vacate the Judgment Order, as well as the order dated November 12,

2008,[5] and to conduct further proceedings consistent with this opinion.

### Conclusion

The trial court erred in concluding that Lincoln Bank's mortgage and the four mechanic's liens were equal in priority.

Reversed and remanded with instructions.

DARDEN, J., and ROBB, J., concur.

**5.** While we remand with instructions to vacate the November 12, 2008 order entering summary judgments for the Plaintiffs, we do so for the reasons discussed herein, but not to question the Nichols Group's contractual obligations to the mechanic's lienholders.