ATTORNEY FOR APPELLANTS
Vincent M. Campiti
South Bend, Indiana

ATTORNEY FOR APPELLEES
Mark A. Holloway
Indianapolis, Indiana



## In the
## Indiana Supreme Court

50S03-1001-CV-57

ROBERT BULES AND BRIAN BULES,

*Appellants (Plaintiffs below),*

v.

MARSHALL COUNTY AND MARSHALL COUNTY
HIGHWAY DEPARTMENT,

*Appellees (Defendants below).*

Appeal from the Marshall Superior Court, No. 50D01-0701-CT-00001
The Honorable Curtis Palmer, Special Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 50A03-0812-CV-620

**January 27, 2010**

**Boehm, Justice.**

The Indiana Tort Claims Act provides governmental units immunity from liability for losses caused by temporary weather conditions. We have previously held that this immunity applies during the period of reasonable response to a weather condition. We hold today that that period lasts at least until the weather condition has stabilized, and immunizes the governmental unit from liability for alleged flaws in its remedial steps.

**Facts and Procedural History**

In the early morning of January 15, 2005, Robert Bules was driving a tractor-trailer southbound on King Road in Marshall County. As the vehicle crested a hill north of the intersection of King Road and Plymouth-Goshen Trail, Bules found water in the road ahead. Around the same time, Bules noticed a sign on the edge of the water, but did not realize it was a High Water sign. Bules was unable to stop, and crashed after hitting the water and losing control.

Bules and his son Brian, a passenger, were injured and both sued Marshall County, alleging negligent warning of the dangerous road condition. The County moved for summary judgment, citing the provision of the Indiana Tort Claims Act (ITCA) that provides governmental immunity for any loss "that results from . . . [t]he temporary condition of a public thoroughfare . . . that results from weather." Ind. Code § 34-13-3-3(3) (2004).

The following facts are undisputed in the designated evidence supporting and opposing the County's motion. The accident occurred on a Saturday. Marshall County experienced a record high of 62 °F on the preceding Wednesday, followed by a drop to the low teens early on the day of the accident. This unusual temperature fluctuation caused the Yellow River to flood surrounding areas, including King Road, and also produced icy patches. On Thursday and Friday of that week, the County responded to the flooding and icing by placing warning signs and closing some roads and salting and sanding others, including King Road. The Yellow River eventually reached a historic crest on the day of the accident.

Some inferences from the designated evidence are conflicting. Marshall County employee Richard Wallace asserts that the day before the accident he placed one High Water sign near the crest of the hill on King Road, and another near the edge of the flooding. Another County employee, Tim Howell, says he treated the same flooded area of King Road the day before the accident at mid-morning and again around 2:00 PM. Howell observed "about an inch of water" on King Road at the flooding site in the morning but thought it "looked deeper" in the afternoon. Howell also saw a warning sign near the crest of the hill. According to Howell, the flooding covered "about a 20 foot stretch" of King Road, and traffic had splashed water beyond the flooded portion, resulting in icy patches which he salted and sanded. Bules's deposition

2

testimony is somewhat inconsistent with the accounts of the County employees. Bules testified that he had driven through the same intersection twice on the day before the accident, southbound around mid-morning and northbound around noon. Bules testified it was sunny and "there was absolutely no water over the road." Bules did not notice any High Water signs that day. As explained below, we do not find these discrepancies to present an issue of material fact.

The Buleses argued in response to the County's motion for summary judgment that the immunity did not apply because the accident was caused by the inadequacy of the County's warnings, not by a temporary weather condition. Specifically, Bules claimed that he saw only one sign that was placed next to the water and did not see a sign on the crest of the hill. He also stated that even if a sign had been placed at the crest of the hill it would not have been adequate warning to allow him to avoid the accident.

The trial court found that the County was entitled to immunity and granted summary judgment. On appeal, the Buleses argued that the trial court erred in finding immunity and also in striking portions of Bules's affidavit and in excluding a letter purportedly from the County's insurance agent to Bules. The Court of Appeals reversed, reasoning that whether the placement of the signs was negligent presented a genuine issue of material fact which foreclosed immunity under subsection (3). Bules v. Marshall County, No. 50A03-0812-CV620, 2009 WL 2014154 (Ind. Ct. App. 2009). Because the Court of Appeals reversed summary judgment against the Buleses, it did not address their evidentiary contentions. Id. at *3 n.1. We granted transfer.

**Standard of Review**

We review a summary judgment order de novo. Atterholt v. Herbst, 902 N.E.2d 220, 222 (Ind. 2009), clarified on reh'g, 907 N.E.2d 528 (Ind. 2009). We must determine whether the evidence that the parties designated to the trial court presents a genuine issue of material fact and whether the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C); Dreaded, Inc. v. St. Paul Guardian Ins. Co., 904 N.E.2d 1267, 1269–70 (Ind. 2009). We construe all factual inferences in the nonmoving party's favor and resolve all doubts as to the existence of a material issue against the moving party. Id.

3

# I. Immunity for "Temporary" Weather Conditions

A governmental entity has a duty to maintain public thoroughfares. Gary Cmty. Sch. Corp. v. Roach-Walker, 917 N.E.2d 1224 (2009). This duty requires the entity to adopt appropriate precautions—including warning of hazardous road conditions or temporarily closing roads—to prevent persons exercising due care from suffering injury. 63 C.J.S. Municipal Corporations §§ 705, 747 (1999). The ITCA provides the following immunity to liability for breach of this duty:

> A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from
>
> . . .
>
> > (3) The temporary condition of a public thoroughfare . . . that results from weather."

I.C. § 34-13-3-3(3). Immunity under subsection (3) requires that the loss result from a condition that is both "temporary" and "caused by weather." Roach-Walker, 917 N.E.2d at 1227. Whether an immunity applies is a matter of law for the courts to decide. Id. at 1226; Hochstetler v. Elkhart County Highway Dep't, 868 N.E.2d 425, 426 (Ind. 2007). The party seeking immunity bears the burden of establishing the immunity. Roach-Walker, 917 N.E.2d at 1226; Hochstetler, 868 N.E.2d at 426. If the evidence permits conflicting reasonable inferences as to material facts, the governmental unit has failed to establish its immunity. Roach-Walker, 917 N.E.2d at 1226.

As we explained in Roach-Walker, "when the government is in the process of responding to a weather condition, as a matter of law the immunity conferred in subsection (3) . . . extends to all claims caused by that condition during the period of reasonable response, whether the alleged injury occurred early or late in the response." 917 N.E.2d at 1228. Here, it is undisputed that the flooding and freezing of the resulting water was attributable to the unprecedented fluctuation in the weather the few days preceding the accident. The water and ice in the road leading to the accident undoubtedly presented a condition "caused by weather." But whether the condition was "temporary" and therefore conferred immunity is a closer question. There is some conflict in the designated evidence over how many signs were at the accident site, where they were placed, and whether King Road was "dry" the afternoon of the day before the accident. It is undisputed that the County was aware of the flooding, assessed the situation, closed the adjacent Plymouth-

Goshen Trail, and sent County employees on at least three trips to the flooded area where the accident occurred to place warning signs and to salt the roads to address the icing.

The foregoing facts establish that the County had notice of the condition, had the opportunity to respond, and did in fact respond. The Buleses argue the condition was therefore no longer temporary. We do not agree. The County designated undisputed evidence that the Yellow River continued to rise after the County's initial response on January 13 and 14. A historic crest was reached on January 15, the day of the accident. The condition caused by the weather—the flooding of the Yellow River and the subsequent icing near the flooding—had not yet stabilized.

The Buleses also argue that the County's response was inadequate or improper. Even if the County was negligent in its initial response to warn passengers of the flooding on King Road, the accident occurred during the period of a still evolving condition. Immunity presumes duty and breach—without duty and breach, there is no need for immunity. As we held in Catt v. Board of Commissioners of Knox County, 779 N.E.2d 1 (Ind. 2002), negligent maintenance of a road is irrelevant if immunity applies. The same is true of an allegedly negligent response to a weather condition. As a governmental entity responds to the temporary conditions, the statute confers immunity at least until the condition is stabilized and the responses are completed. Taking the facts most favorable to the Buleses, they establish no more than that signs were placed in inappropriate locations. But the fact that the County's response in some of the affected area was completed or poorly done does not establish that the condition was no longer temporary.

Construing the facts most favorably to the Buleses and assuming negligent placement of warnings, the County has demonstrated that the condition causing the injuries was created by an uncharacteristic weather pattern, and the condition continued to worsen during the hours leading up to the accident and the County had begun to respond. The statute confers immunity during the "period of reasonable response" to a condition. Immunity applies even if the response is in some respects inadequate as the Buleses claim here. The window of reasonable response wherein immunity applies is at a minimum the period of time it takes the condition throughout the affected area to stabilize. In this case, after the County attempted to address the flooding and ice at the accident site, the condition continued to worsen into the early morning of the day of the

5

accident. The "period of reasonable response" lasts at least until the condition stops worsening, in this case when the Yellow River crested. Because the accident occurred during this period, immunity applies, regardless of the alleged inadequacies in the County's initial response at the site of the Buleses' accident.

## II. Evidentiary Issues

The Buleses contend the trial court erred in disregarding two items of evidence designated by the Buleses. First, they argue that the trial court erred in striking portions of Bules's affidavit that detailed his opinion as to how the County was negligent and how he would have acted had he been properly warned of the flooding. How Bules might have responded if he were properly warned is not relevant to whether the condition was "temporary," and therefore the trial court's striking these statements, even if erroneous, is not material to its ruling on the County's summary judgment.

The second evidentiary issue is the trial court's exclusion of a letter, apparently from an insurance agent, stating that "the Insurance Carrier for Marshall County . . . has accepted liability for the accident." The Buleses argue that the letter suggests that the County either admitted liability or had waived any claim to immunity. There are several problems with this letter. First, the Buleses filed a "Designation of Facts Precluding Summary Judgment," which did not refer to the letter and made no mention of any claim of waiver or admission of liability. Second, we assume an insurer of a governmental unit might reasonably attempt to settle on the basis of cost of litigation even if it believed its insured had a valid immunity claim. But nothing in the designated evidence establishes the context within which the letter was sent, who the agent was, what role he played in handling the Buleses' claims, or whether he had any authority to settle claims on behalf of the County or the insurer. Nor does the record establish whether the County had any relevant insurance, and if so, what it covered or what liabilities or exclusions applied.

At the hearing on the County's motion for summary judgment, the County acknowledged that the agent was acting on behalf of the County's insurer but argued that the letter was part of ongoing settlement negotiations between the agent and the Buleses. The trial court found that the letter was subject to Indiana Rule of Evidence 408 and was therefore inadmissible to establish a concession of liability. On the face of the letter it is plausible that the letter was

6

generated in the course of settlement discussions, and neither party offered any evidence to confirm or rebut the County's claim. Rule 408 renders inadmissible evidence of "compromise and offers to compromise" to prove liability. It is designed to facilitate settlement by promoting candor in settlement discussions, and therefore excludes "[i]nterim negotiating concessions." Worman Enter., Inc. v. Boone County Solid Waste Mgmt., 805 N.E.2d 369, 376–77 (Ind. 2004). A party may concede some points in an attempt to reach a compromise without waiving them if no agreement can be reached. Id. On this sparse record, consisting only of the naked letter, no relevant designated facts, and the unsworn statements of counsel, the trial court did not abuse its discretion in excluding the letter pursuant to Rule 408.

### Conclusion

The judgment of the trial court is affirmed.

Shepard, C.J., Sullivan, J., and Rucker, J., concur.

Dickson, J., dissents, believing that the Court of Appeals was correct.