**ROBERT NEISES CONSTRUCTION CORP., Appellant–Plaintiff,**

v.

**GRAND INNOVATIONS, INC., Centier Bank, Kentland Bank, Schilling Bros. Lumber & Hardware, Inc., Smith Ready Mix, Inc., COR Properties, LLC, Precision Concrete and Cory Knoerzer, Appellees–Defendants.**

No. 45A03–1004–PL–238.

Court of Appeals of Indiana.

Dec. 22, 2010.

Douglas R. Kvachkoff, Crown Point, IN, Attorney for Appellant.

Robert E. Stochel, Crown Point, IN, Attorney for Appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Robert Neises Construction Corporation ("Neises") appeals the trial court's grant of summary judgment in favor of Kentland Bank ("Kentland") in this foreclosure action. Neises presents the following issues for our review:

1. Whether the trial court erred when it concluded that Kentland's expenditures to protect the subject real estate from damage pending the foreclosure ("preservation expenses") should take priority over Neises' and others' mechanic's liens.

2. Whether the trial court erred when it did not assign Neises' mechanic's lien a higher priority than Kentland's mortgage lien in the distribution of the proceeds from the sheriff's sale.

We affirm.

### FACTS AND PROCEDURAL HISTORY

On May 13, 2008, Grand Innovations, Inc. ("GI") executed and delivered to Kentland a promissory note in the amount of $193,000. To secure repayment of the promissory note, GI executed and delivered to Kentland a mortgage against real estate located in Hobart ("the real estate"). The amount borrowed by GI was to be used to construct a single-family residence on the real estate. Kentland's mortgage was recorded on July 7, 2008. GI had another mortgage on the real es-

tate with Centier Bank, which had been recorded in May 2007.

GI had hired Neises to help construct the residence, and Neises began work on the project in April 2008. On July 14, 2008, Neises filed a mechanic's lien against the real estate in the amount of $22,369. Other contractors then also filed mechanic's liens against the real estate.

On October 21, 2008, Neises filed a complaint to foreclose on its mechanic's lien and named, among others, GI, Centier Bank, and Kentland as defendants. On December 11, 2008, Kentland filed a counterclaim, cross-claim and third party claim seeking, in relevant part, to foreclose on its mortgage against the real estate. On December 23, Kentland filed its "Emergency Motion for Access to Real Estate to Preserve and Protect Collateral." In that motion, Kentland averred that, pursuant to the terms of its mortgage, it had the "right to preserve and protect the Hobart property when such collateral is in jeopardy of being lost or damaged." Appellant's App. at 136. Kentland stated that GI had stopped construction of the single-family residence on the real estate and had "left the property in jeopardy of being destroyed or subject to significant damage due to weather." *Id.* In particular, the structure had no roof or wrapping around the exposed framing. None of the other parties objected to Kentland's emergency motion, but the trial court never ruled on it. Nevertheless, Kentland paid a contractor $20,188.91 to install the roof and otherwise protect the structure from the elements.

On October 8, 2009, Kentland filed a motion for partial summary judgment seeking to foreclose on its mortgage lien. In that motion, Kentland sought priority over the mechanic's lien holders for recovery of the $20,188.91 that it had spent to protect and preserve the real estate during the course of the foreclosure proceedings.

The trial court granted Kentland's motion and ordered that the proceeds from the sheriff's sale of the real estate be distributed as follows:

> First, to the costs of the action and payment of any property taxes on the real estate that are due and owing....
>
> Second, to payment of the sums due Centier Bank [which held a first mortgage lien against the real estate] herein;
>
> Third, to payment to Kentland Bank in the sum of $20,188.91 as recovery of costs and expenses incurred for preservation of the property;
>
> Fourth, to the payment of the sum of $185,251.07 due and owing Kentland Bank herein and the sums due and owing [Neises] and Schilling Bros. Lumber & Hardware, Inc., pro-rata....

Appellant's App. at 20. This appeal ensued.

## DISCUSSION AND DECISION

### Standard of Review

We review a summary judgment order de novo. *Bules v. Marshall County,* 920 N.E.2d 247, 250 (Ind.2010). The purpose of summary judgment is to end litigation about which there can be no factual dispute and which may be determined as a matter of law. *Shelter Ins. Co. v. Woolems,* 759 N.E.2d 1151, 1153 (Ind.Ct.App. 2001), *trans. denied.* We must determine whether the evidence that the parties designated to the trial court presents a genuine issue of material fact and whether the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C); *Bules,* 920 N.E.2d at 250. We construe all factual inferences in the nonmoving party's favor and resolve all doubts as to the existence of a material issue against the moving party. *Bules,* 920 N.E.2d at 250.

### Issue One: Priority of Preservation Expenses

Neises first contends that the trial court erred when it gave priority to Kent-

land for the amount it spent to protect the partially-constructed house against damage from weather. Neises maintains that, "[w]hile the court's ruling might make good public policy, ... there is no provision in any statute for such super prioritization." Brief of Appellant at 17–18.

■ But, as Kentland correctly points out, an action to foreclose on a mortgage is essentially equitable in nature. *Deutsche Bank Nat'l Trust Co. v. Mark Dill Plumbing Co.,* 903 N.E.2d 166, 168 (Ind.Ct.App. 2009), *clarified on reh'g,* 908 N.E.2d 1273 (Ind.Ct.App.2009). Trial courts have "full discretion to fashion equitable remedies that are complete and fair to all parties involved." *Id.* (quoting *Porter v. Bankers Trust Co. of California, N.A.,* 773 N.E.2d 901, 909 (Ind.Ct.App.2002)). Here, Kentland sought the trial court's permission to take emergency measures to protect the unfinished structure on the real estate from damage due to weather conditions during the pendency of the foreclosure proceedings. Kentland notified the other parties, and none of them objected to Kentland's motion. While the trial court did not rule on the motion, even Neises acknowledges that Kentland's actions were for the "benefit of all" of the lienholders. Brief of Appellant at 18.

It is undisputed, then, that Kentland paid for the installation of a roof and other protective measures meant to preserve the integrity of the unfinished house, which benefited each of the lienholders. There is no suggestion that the expenses were unreasonable or that the protective measures were otherwise ill-conceived. Indeed, Neises never objected to Kentland's emergency motion, so it cannot now complain. Because Kentland, Neises and the other lienholders were engaged in a common enterprise, and each benefited from the

protective measures for which Kentland bore the full expense, the trial court properly exercised its equitable powers to give Kentland priority for preservation expenses over Neises and the others in its distribution of the proceeds from the sheriff's sale.

### Issue Two: Pro-rata Distribution

■ Neises next contends that the trial court erred when it did not assign Neises' mechanic's lien a higher priority than Kentland's mortgage lien and the other mechanic's liens in the distribution of the proceeds from the sheriff's sale. Neises maintains that because it began construction in April 2008, its mechanic's lien, filed on July 14, 2008, was "effective" in April and has priority over the mortgage and other mechanic's liens. We cannot agree.

Indiana Code Section 32–28–3–5 provides in relevant part:

(b) The recorder shall record the statement and notice of intention to hold a lien when presented under section 3 of this chapter in the miscellaneous record book.... When the statement and notice of intention to hold a lien is recorded, the lien is created. The recorded lien relates back to the date the mechanic or other person began to perform the labor or furnish the materials or machinery. Except as provided in subsections (c) and (d), a lien created under this chapter has priority over a lien created after it.

(c) The lien of a mechanic or materialman does not have priority over the lien of another mechanic or materialman.

(d) The mortgage of a lender has priority over all liens created under this chapter that are recorded after the date the mortgage was recorded, to the extent of the funds actually owed to the lender for the specific project to which the lien rights relate. This subsection does not apply to a lien that relates to a construction contract for the development, con-

struction, alteration, or repair of the following:

(1) A Class 2 structure (as defined in IC 22–12–1–5). . . .

██ Neises contends that, while it did not file its mechanic's lien until July 14, 2008, the lien relates back to April 2008, when it began work for GI, and therefore became "effective" in April 2008. But the plain language of the statute provides that the lien is created "when the statement and notice of intention to hold a lien is recorded[.]" *See id.* Reading the statute as a whole and construing its terms to avoid an absurd result, the "relation back" provision authorizes the claimant to claim compensation for labor and materials provided back to the date he began work on the project, but it does not give the lien priority at any time before the date of filing. Because Neises recorded its lien on July 14, 2008, it does not take priority over Kentland's mortgage, which was recorded on July 7, 2008. Further, it is well settled that a mortgage for construction of a house has the same priority as a mechanic's lien where, as here, the mortgagee and the mechanic's lienholder are engaged in a common enterprise and neither of them is in a position to claim priority. *See Lincoln Bank v. Conwell*, 911 N.E.2d 45, 48 (Ind.Ct.App.2009) (citing *Ward v. Yarnelle*, 173 Ind. 535, 91 N.E. 7, 15 (1910), for holding that a mortgage for the construction of a house has same priority as a mechanic's lien), *trans. denied.* And pursuant to subsection (c) of the statute, Neises' mechanic's lien does not have priority over the other mechanic's liens. Neises cannot prevail on this issue.

Affirmed.

DARDEN, J., and BAILEY, J., concur.